611 A.2d 775

**Scott CURSON, Randy Curson and Ellen Curson, Appellants,**

v.

**WEST CONSHOHOCKEN MUNICIPAL AUTHORITY, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1992.

Decided June 5, 1992.

James P. Georghegan, for appellants.

Richard T. Abell, for appellee.

Before DOYLE and SMITH, JJ., and LEDERER, Senior Judge.

DOYLE, Judge.

This is an appeal by Scott Curson, Randy Curson and Ellen Curson from an order of the Court of Common Pleas of Montgomery County ordering the Cursons to pay $26,400 in sewer connection fees to the West Conshohocken Municipal Authority (Authority).

In August of 1989, the West Conshohocken Borough Council enacted an ordinance which required all residents of the Borough to connect to sanitary sewers which the Authority [1] was constructing and which would be completed in 1990. West Conshohocken Code § 93–23 (Code). The ordinance also authorized the Authority to impose and collect a "connection fee" in conjunction with the sanitary sewers. Code § 93–58. The Authority set the "connection fee" at $1200 per "equivalent dwelling unit" (EDU).

1. The West Conshohocken Municipal Authority was organized under the Municipality Authorities Act of 1945 (Act), Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§ 301–322.

The Cursons own an apartment building which contains twenty-two residential units and the Authority treated each residential unit in the building as a separate EDU. It thus imposed a "connection fee" of $26,400 (22 × $1200 = $26,400) for the Cursons' apartment building.

The Cursons refused to pay the connection fee and the Authority brought suit in common pleas court seeking judgment in the amount of $26,400. After a bench trial on May 21, 1991, the court entered judgment in favor of the Authority for the full amount requested. The Cursons filed post trial motions, which were denied, and then appealed to this Court.

On appeal, the Cursons contend that the "connection fee" of $1200 for each apartment unit was imposed without regard to the actual cost of the connection. They argue that it is therefore arbitrary, unreasonable, unconstitutional, and not in accordance with the Act or the Code.[2]

First, we note that the "connection fee" imposed was entirely in accordance with the Code provision providing for a connection fee. Section 93–58 of the Code provides:

The West Conshohocken Municipal Authority shall impose and collect a connection fee for each improved property in an amount to be determined from time to time by the Authority for each equivalent dwelling unit, the number of equivalent dwelling units for each improved property to be determined by the West Conshohocken Municipal Authority.

Section 93–54 of the Code defines "equivalent dwelling unit" as "the estimated equivalent amount of domestic sanitary sewage discharged by a single-family dwelling unit or a quarterly average of one hundred eighty (180) gallons per day." "Dwelling Unit" is defined as "[a]ny ... apartment ... connected, directly or indirectly, to the sewer system and occu-

---

2. Although the Cursons allege that the fee imposed violates both the state and federal constitutions, they fail to specifically identify which section or sections of which constitution the fee violates. Because the Cursons fail to make any argument concerning the constitutionality of the fee other than a bald allegation that it is unconstitutional, we decline to address this argument because the issue is waived. See Pa.R.A.P. 2119(b).

pied or intended for occupancy as living quarters by an individual, a single family or other discrete group of persons...." Code § 93–54.

By the terms of the Code, it is clear that each apartment unit within an apartment building constitutes a "single-family dwelling unit" and thus a separate EDU. The Cursons' apartment building contains twenty-two apartment units, and thus twenty-two EDUs. The Authority imposed a connection fee of $1200 for each apartment unit or $26,400 in all. Thus, the Authority's action conformed to the requirements of the Code.

The Cursons, however, argue that the fee violates the Act because, they allege, it is unreasonable and not related to the "actual cost of connection." The Cursons maintain that there is only one connection between their apartment building and the sewer, not twenty-two, and that the actual cost of this one connection is far less than $26,400. Essentially, the Cursons suggest that it is improper to finance the construction of the entire sewer system using connection fees and that the connection fee should be limited to the actual cost of connection for each improved property.

■ As the challenging party, the burden is on the Cursons to show that the Authority abused its discretion or that the rate system established is arbitrary or unreasonable. *Life Services, Inc. v. Chalfont–New Britain Township Joint Sewage Authority,* 107 Pa.Commonwealth Ct. 484, 528 A.2d 1038 (1987). We must agree with the trial court that the Cursons failed to meet this heavy burden.

■ The Authority, admittedly, did not base its connection fee on the actual cost of the connection; however, this is not necessarily an arbitrary decision. The connection fee of $1200 was an integral part of the financing scheme to construct the entire sewer system. The cost of constructing the sewer system, which is shared by several municipalities, was financed by a bond issue, a Federal Environmental Protection Agency (EPA) grant and the connection fee. The connection fee was arrived at by subtracting the proceeds of the bond

issue and grant proceeds from the total cost of construction, and then dividing the resulting amount by the number of EDUs in West Conshohocken. Thus, the connection fee was based upon the cost of financing the construction of the entire sewer system, not just the cost of connecting each individual EDU to the system. Because each dwelling *unit* uses the entire sewage system, and the entire system benefits each unit in an identical manner, each unit is therefore made to bear an equal share of the cost. Such a plan is not unreasonable and the West Conshohocken Borough secretary testified at trial that the connection fee was charged uniformly to all apartment buildings.

█ We can find nothing in the Act which prevents an Authority from imposing a connection or tapping fee as a means of financing construction of a sewer system. In fact, an Authority is given broad discretion in imposing fees and charges for the construction and maintenance of facilities. Section 4B(h) of the Act, 53 P.S. § 306B(h), provides that an authority may

> fix, alter, charge and collect rates and other charges in the area served by its facilities at *reasonable and uniform* rates to be determined exclusively by it, *for the purpose of providing for the payment of* the expenses of the Authority, *the construction, improvement, repair,* maintenance and operation of its facilities and properties, and ... the payment of principal and interest on its obligations.... (Emphasis added.)

Furthermore, the version of Section 4B(t) of the Act, 53 P.S. § 306B(t), in effect at the time the Authority established its connection fee[3] permitted an authority

---

**3.** Section 4B(t) of the Act was substantially amended by Section 1 of the Act of December 19, 1990, P.L. 1227. The amendments enumerate three types of permitted fees, "Connection fees", "Customer facilities fees" and "Tapping fees", and define each of them. Because these substantive amendments were enacted after the cause of action arose in this case, however, they have no effect on its outcome. *See Bortulin v. Harley–Davidson Motor Co., Inc.,* 115 Pa.Commonwealth Ct. 42, 539 A.2d 906 (1988), *petitions for allowance of appeal denied,* 520 Pa. 619, 554 A.2d 511; 521 Pa. 606, 555 A.2d 116 (1988). Moreover, the

> [t]o charge a tapping fee whenever the owner of any property connects such property with a sewer system ... constructed by the Authority which fee shall be in addition to any charges assessed and collected against such property in the construction of such sewer ... by the Authority or any rental charges assessed by the Authority.

We have held that such a fee is an appropriate method of securing financing for the overall construction of a sewer project. *See Van Voorhis v. Peters Creek Sanitary Authority*, 60 Pa.Commonwealth Ct. 51, 430 A.2d 1017 (1981); *Life Services, Inc.* ("contribution fee" is an appropriate method of financing construction of sewer system).

■ The Cursons' argument turns on their characterization of the fee imposed by the Authority in the instant case as one intended to cover the cost of "connection" to the sewer system. This argument is merely one of semantics. While the Code refers to "connection fee" rather than using the term "tapping fee" employed in the Act, the Authority was certainly imposing what was a tapping fee.[4] This is apparent from Section 93–28.4 of the Code which, as pointed out by the Cursons themselves, provides that "all costs and expenses of connection of a building sewer [5] to a sewer shall be borne by the owner of the improved property to be connected...." In light of Section 93–28.4, it is clear that the "connection fee" is not a fee intended merely to cover the limited expense of literally connecting a property to the sewer system, but is rather a tapping fee.

The Cursons have failed to supply any evidence which would suggest that the fee adopted by the Authority is unreasonable or not uniform. They presented only one witness, Scott

Cursons do not even argue that this amendment applies to their case, nor do they cite the amended version of the statute in their brief.

4. Again, we emphasize that the 1990 amendments to Section 4B(t) of the Act are not at issue here. Thus, employing the term "connection fee" for what may be in essence a "tapping fee" is of no legal consequence in this appeal.

5. A "building sewer" is apparently the sewer line running from a building which connects with the main sewer line within the Authority's right-of-way.

Curson, who was not able to offer any testimony contradicting the cost basis of the connection fee, and no documentary evidence. We conclude that the charge was reasonable in relation to the cost of constructing the sewer and was applied uniformly to all apartment buildings. Accordingly, we will affirm the order of the trial court.

## ORDER

NOW, June 5, 1992, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.