## The Carlyle Group Inc. v. Warwick Township

*David E. Wagenseller III,* for plaintiff.
*William C. Crosswell,* for defendants.

GEORGELIS, *J.,* October 14, 1993—Before us are the plaintiff's motion for summary judgment and the defendants' cross-motion for partial summary judgment. We have considered the parties' briefs and oral arguments, and, for the reasons stated below, the plaintiff's motion will be denied and the defendants' cross-motion will be granted.

The factual and procedural history, relevant to the disposition of the motions, is the following. Beginning sometime around 1963, the plaintiff's predecessor in title began to construct the Twin Brook Mobile Home Park. Since the area where the Park was built was not served by a public water system, the owners built their own system to service the residents of the Park.

In 1983, the defendants undertook a study to determine the feasibility of providing public water service in the Village of Rothsville, which includes the Park. The then-owner of the Park responded to a questionnaire, which was sent to all property owners in the Village, and indicated that he would be interested in receiving public water service for the Park. In September of 1986, the Township of Warwick and the Warwick Township Municipal Authority decided to go forward with the project, and the water system became operational in July of 1989.

On November 18, 1988, the plaintiff was issued a permit by the Pennsylvania Department of Environmental Resources pursuant to the Pennsylvania Safe Drinking Water Act, Act of May 1, 1984, P.L. 206, No. 43, 35 P.S. §721.1 et seq. On August 7, 1989, the plaintiff received a connection notice from the Township, which notice was pursuant to Ordinance 104, which it enacted under authority granted it by the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §66602.2. The plaintiff was also

notified of the connection and tapping fees imposed by the Authority under Resolution no. 08-01-89-01, which it enacted pursuant to the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §301 et seq. The plaintiff, relying on its DER permit, has refused to connect to the public water system and has refused to pay the connection and tapping fees that have been imposed by the Authority.

On March 7, 1990, the plaintiff filed its complaint in equity, alleging that its DER permit preempted the Township's ordinance and the Authority's resolution. An answer, new matter and counterclaim were filed by the defendants on April 10, 1990, and the motions, which are now before us, followed.

In them, the parties raise one common and major issue, which is: whether the issuance of the DER permit preempts the Township's authority to compel connection to the water system and the Authority's power to impose fees, rates and charges for that system. The defendants identify these additional issues: whether a fee to recover the capital cost of the water system can be imposed upon each dwelling unit in the Park, even though there are not individual connections to the system; and whether the Authority can impose the rates, fees and charges, even though the Park has not been connected to the system. The plaintiffs identify these additional issues: whether the Authority is expressly prohibited from duplicating existing facilities; whether Ordinance 104 conflicts with state law; and whether the legislature has limited the defendants' powers.

We begin our analysis of these issues by noting the standards by which we must be guided in determining the appropriateness of granting a summary judgment. Such a judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See "Pa.R.C.P. 1035(b)." The party moving for summary judgment carries the burden of clearly demonstrating that there is no genuine issue of material fact, and the non-moving party must be given the benefit of all favorable inferences which might be reasonably drawn from the evidence, which must be viewed in the light most favorable to the non-moving party. *Graf v. State Farm Insurance Co.,* 352 Pa. Super. 127, 129, 507 A.2d 414, 415 (1986). We will apply these standards to the issues raised by the parties.

As to the preemption issue, the defendants contend that: (1) the Code permits the Township to enact an ordinance to compel all of the owners of property abutting a water system constructed by a municipal authority to connect to it; (2) the Authorities Act allows a municipal authority to impose rates, fees and charges for utility systems owned and operated by that authority; (3) the Act is intended to ensure safe drinking water and not to limit the Township's powers under the Code or the Authority's powers under the Authorities Act; and (4) the Act, the Code and the Authorities Act must be read in pari materia, and, when that is done, the plaintiff's obligation to connect to the Authority's water system is not negated. The plaintiff refers us to *Duff v. Township of Northampton,* 110 Pa. Commw. 277, 288, 532 A.2d 500, 505 (1987), and contends that, when the questions set forth in that decision are considered and answered, the result should be the preemption of the Township's and the Authority's powers. We agree with the defendants' position on this preemption issue.

First, we note that neither party asserts the existence of unresolved questions of fact, and we agree that none

exists, allowing the issue to be decided as a matter of law. This leads us to examine the language of the applicable legislation, and we begin with the Act. In its "legislative findings and declaration" section, the General Assembly addressed its purpose and stated:

"It is the purpose of this act to further the intent of Section 27 of Article I of the Constitution of Pennsylvania by:

"(1) Establishing a state program to assure the provision of safe drinking water to the public by establishing drinking water standards and developing a state program to implement and enforce the standards.

"(2) Developing a process for implementing plans for the provision of safe drinking water in emergencies.

"(3) Providing public notice of potentially hazardous conditions that may exist in a water supply." 35 P.S. §721.2(b).

In addition to this language, we have examined the entire Act, and we found, as the defendants have noted, that it in no way limits, in fact does not even address, the statutory powers, which were exercised by the Township and the Authority and which are the subject of this preemption issue.

DER promulgated regulations pursuant to the Act, which regulations state their purpose to be:

"...to protect the public health and safety by assuring that public water systems provide a safe and adequate supply of water for human consumption by establishing drinking water quality standards, permit requirements, design and construction standards, system management responsibilities and requirements for public notification." 25 Pa. Code §109.2

The Code provides, in relevant part, as follows:

"Whenever a water supply system is or shall have been established or constructed by a municipality authority within a township of the second class, the township supervisors shall be empowered by ordinance[,] to compel all owners of property abutting thereto to make connection therewith." 53 P.S. §66602.2

The Township's Ordinance 104 was enacted under the authority granted by this section of the Code. The Authority was formed pursuant to the Authorities Act, which allows it to construct, maintain, operate and own a public water system [53 P.S. §306A(a)(10)] and to:

". . . fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties . . ." 53 P.S. §306B(h).

Resolution no. 08-01-89-01 was enacted pursuant to the power granted by this section of the Authorities Act.

We note preliminarily that the plaintiff, in asking us to hold that the DER permit preempts the Township's ordinance and the Authority's resolution, asks us in essence to hold that one General Assembly statute (the Act) preempts two others (the Code and the Authorities Act), since the ordinance and resolution were clearly enacted pursuant to the Code and the Authorities Act, respectively.[1] We will not, however, address the preemption issue in this context but in the context previously stated, *i.e.,* whether the Act preempts Ordinance 104 and the resolution. Our appellate courts have addressed the question of preemption in this context, and,

---

1. The defendants state this observation in their brief.

in doing so, we believe that they have made it clear that preemption is inapplicable in circumstances as the ones before us.

In *Duff v. Township of Northampton,* 110 Pa. Commw. 277, 532 A.2d 500 (1987), our Commonwealth Court held that the "[p]reemption analysis calls for the answer *initially* to whether the field or subject matter in which the ordinance operates, including its effects, is the same as that in which the state has acted. If not, then preemption is clearly inapplicable." (emphasis added) *Id.* at 287, 532 A.2d at 504. As can be seen from the statutory language, which is quoted above, the field or subject matter of the Act is clearly safe drinking water, and the field or subject matter of the herein applicable sections of the Code and the Authorities Act is the construction and maintenance of a water system. We do not believe these fields or subject matters, or their effects, are the same. In fact, as the defendants note, they complement each other since it is obvious that the provisions of the Act must apply to any water system, the Township's as well as the plaintiff's. We do not reach the questions in *Duff,* to which the plaintiff refers us, because the initial inquiry, required by *Duff,* leads us to conclude that preemption is inapplicable.

In *Council of Middleton Township v. Benham,* 514 Pa. 176, 523 A.2d 311 (1987), our Supreme Court, in addressing the preemption issue, held:

"[t]he state is not presumed to have preempted a field merely by legislating in it. The general assembly must clearly show its intent to preempt a field in which it has legislated. ... The test for preemption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or 'indicate[] an intention on the part of the legislature that it should not be supplemented by municipal bod-

ies.'" (citations omitted) *Id.* at 180-81, 523 A.2d at 313.

In reviewing the Act, we find no clear intent of the General Assembly to preempt any ordinance similar to the one before us. Additionally, that Act does not state, on its face, that an ordinance similar to the one before us is forbidden nor that a municipal body is not permitted to supplement the contents of the Act. We believe *Benham* is authority for our conclusion that preemption is not applicable in the case before us.

Finally, our Commonwealth Court has held that "[t]he ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act." *Duff v. Township of Northampton, supra* at 288, 532 A.2d at 504.

After surveying all of the interests involved in the preemption issue before us, we cannot say with any confidence that the General Assembly, in enacting the Act, intended to immobilize municipalities from dealing with matters similar to the ones dealt with by the defendants before us, *i.e.,* the construction and maintenance of a water system. We believe *Duff* is authority for our conclusion on the preemption issue.

For all of these reasons, we conclude that preemption is inapplicable in the case before us. Accordingly, we hold that Ordinance 104 and Resolution no. 08-01-89-01 are not preempted by the Act (or by the permit issued the plaintiff pursuant to it) and that the Township has the authority to compel the plaintiff to connect to the Township's water system and the Authority has the power to impose fees, rates and charges for that system.

In their next issue, the defendants contend that they are entitled to judgment as a matter of law on the issue

of whether they may recover the capital cost of the water system by imposing a per dwelling unit fee on the Park. The plaintiff contends, inter alia, that unresolved questions of fact preclude the entry of summary judgment on this issue of the capital cost fee. We agree with the plaintiff that questions of fact remain unresolved as to the amount of the capital cost for the water system and as to the amount of the fee per unit, because the Authorities Act requires such costs and fees to be "reasonable and uniform." However, we note that the defendants seek partial summary judgment and that they acknowledged, at oral argument, that the amounts of the capital cost and of the fees can await the resolution of these unresolved questions of fact. We believe that the issue of the validity of a per unit fee to recover the capital cost of the water system can be decided as a matter of law.

Our Commonwealth Court, in *Curson v. West Conshohocken Municipal Authority,* 148 Pa. Commw. 386, 611 A.2d 775 (1992), addressed and decided this issue. *Curson* involved a sewer system and an apartment owner's appeal of the imposition of a connection fee for each apartment unit. That court held that nothing in the Authorities Act prevents a municipal authority from imposing a connection or tapping fee as a means of financing the construction of a sewer system and that the Authorities Act gives a municipal authority broad discretion in imposing fees and charges for the construction and maintenance of facilities. *Id.* at 391, 611 A.2d at 777. In so holding, it referred to 53 P.S. §306B(h) and noted that it permits a municipal authority to:

"fix, alter, charge and collect rates and other charges in the area served by its facilities at *reasonable and uniform* rates to be determined exclusively by it, *for*

*the purpose of providing for the payment of* the expenses of the Authority, *the construction, improvement, repair,* maintenance and operation of its facilities and properties, and . . . the payment of principal and interest on its obligations. . . . (emphasis added)" *Id.*

It then held that, since the connection fee was based upon the cost of financing the construction of the entire sewer system and not just the cost of connecting each individual dwelling unit to the system and since each dwelling unit used the entire sewage system which benefitted each unit in an identical manner, it is not unreasonable to make each dwelling unit to bear an equal share of the cost. *Id.*

Even though *Curson* involved a sewer system, we see no reason why its holding should not apply to the water system in the case before us. Accordingly, we apply *Curson* and hold that the defendants are entitled to summary judgment on the issue of whether they can recover the capital cost of the water system by imposing a fee per unit in the Park.

In their final issue, the defendants contend that they are entitled to summary judgment on the question of whether the Authority can impose rates, fees and charges for the connection to and use of the water system, even though the plaintiff has refused to permit the Park to be connected to that system. We believe that our Commonwealth Court has also addressed and answered this question. In *Coudriet v. Township of Benzinger,* 49 Pa. Commw. 275, 411 A.2d 846 (1980), it held that the Coudriets must pay rental fees for the township's sewer system, even though they had not connected their property to it. Specifically, the court stated:

". . . to allow individual property owners to elect not to tap into a sewer system accessible to it would circumvent the statutory purpose behind the imposition

of sewer rentals and undermine the financial soundness of a municipality's sewer system. The rental charges are utilized to meet many fixed costs incurred by the township; cost such as operation expenses, maintenance, repair, inspection and depreciation which are incurred whether or not a particular individual is tapped into the sewer system." *Id.* at 278, 411 A.2d at 848.

Similarly, in *Pelton v. Pine Creek Municipal Authority,* 85 Pa. Commw. 187, 481 A.2d 385 (1984), our Commonwealth Court held that a municipal authority has the power to assess sewer fees against properties which should be, but which are not, connected to the authority's sewer system. *Id.* at 189, 481 A.2d at 386-87. As with *Curson,* we see no reason why the holdings in *Coudriet* and *Pelton,* even though they dealt with sewer systems, should not apply to the water system in the case before us. The rationale of *Coudriet, i.e.,* that allowing individual property owners to elect not to connect to a municipal authority's system would circumvent the statutory purpose behind the imposition of fees for the system and would undermine the financial soundness of a municipality's system, makes eminent sense. We apply the holdings in *Coudriet* and *Pelton,* and we hold that the plaintiff may be charged for the connection to and use of the water system, even though it has refused to connect to it.

Because we have decided to grant the defendants summary judgment on the issues they have presented, we will not specifically address the additional issues presented by the plaintiff, even though we have indirectly done so by deciding the additional issues presented by the defendants. A grant of summary judgment on the grounds presented by the plaintiff in those additional issues would be inconsistent with our granting the defendants summary judgment.

Accordingly, we enter the following:

ORDER

And now, October 14, 1993, for all of the reasons stated in the foregoing opinion, the plaintiff's motion for summary judgment is denied, and the defendants' motion for partial summary judgment is granted. Specifically, judgment is entered in favor of the defendants as follows: (1) they may compel the plaintiff to connect to the Township's water system and impose reasonable fees, rates and charges for that connection; (2) they may impose a per unit fee on the plaintiff for the recovery of the capital cost of the water system; and (3) the rates, fees and charges may be imposed, even if the plaintiff does not connect its property to the water system. Questions involving the amounts and reasonableness of the amounts of the fees, rates and charges may be resolved amicably between the parties or presented for future adjudication.