676 A.2d 1226

**SNYDER BROTHERS, INC., and Drilling Partnership 1992, a Pennsylvania Limited Partnership**

v.

**The PEOPLES NATURAL GAS COMPANY**

v.

**Paul F. YOHE and Pauline Yohe, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 29, 1996.

Filed May 15, 1996.

372

374

George A. Conti, Jr., Greensburg, for appellants.

George W. Lamproplos, Greensburg, for Snyder Brothers, appellee.

Patrick S. Cassidy, Greensburg, for Peoples Natural Gas, appellee.

Before CIRILLO, President Judge Emeritus, and SAYLOR and EAKIN, JJ.

CIRILLO, President Judge Emeritus.

Appellants Paul F. Yohe and Pauline Yohe, husband and wife, appeal from the final decree entered in the Court of Common Pleas of Westmoreland County enjoining the Yohes from interfering with the appellees' rights to operate and maintain gas and oil wells pursuant to lease agreements between the parties. We affirm.

Snyder Brothers, Inc. and Snyder Drilling Partnership 1992 [collectively referred to as "Snyder"] are engaged in the business of drilling and operating wells for the production and sale of gas and oil. Snyder filed an action against the Yohes pursuant to a lease agreement between the Yohes and Snyder. In its complaint, Snyder sought equitable relief in the form of an injunction to restrain the Yohes from interfering with the operation and maintenance of a gas well located on the Yohes' property. Snyder sought, in addition to maintaining its well, to connect the well, pipeline and meter site to the transmission line of The Peoples Natural Gas Company.[1] The transmission line was located on the Yohes' property.

After Snyder filed the original complaint, Peoples was added, without objection, as an additional plaintiff [hereinafter

1. Peoples is a public utility engaged in the business of buying, transporting and selling natural gas. Peoples is regulated by the Pennsylvania Public Utility Commission.

collectively referred to as Plaintiffs]. The trial court made the following findings of fact.

In 1991, Agnes Yohe owned approximately 99 acres of land located in the City of Lower Burrell in Westmoreland County. Agnes Yohe's son, Paul, and his wife, Pauline, lived on the adjoining 16 acre tract of land. This latter property was subject to a right of way granted to Peoples in 1941. Pursuant to the terms of the right of way agreement, Peoples had installed a pipeline; this pipeline has been in continuous operation for the transmission of natural gas.

Early in November of 1991, John B. Maxwell, a Snyder employee, approached the Yohes to obtain oil and gas leases on the properties. Paul Yohe, as spokesman for the family, indicated a willingness to enter into the leases. Maxwell reviewed the lease terms with Paul Yohe, and made available to him a copy of a lease entered into by an individual named Marion Coward (the Coward lease), as a prototype to which Yohe could refer.

Thereafter, Maxwell presented Paul Yohe with two documents. Paul Yohe reviewed the documents. Agnes Yohe signed one lease, and Paul and Pauline Yohe signed the other. The leases, in fact, were not identical to the Coward lease, but no objections were made. The leases were recorded on November 15, 1991.

On April 27, 1992, the total acreage of the two Yohe leases was "unitized," or pooled in accordance with the terms of the agreements. In September and October of 1992, Snyder drilled and completed a producing well, Well No. 2. Two months later, in June of 1992, Agnes Yohe conveyed her interest in the unitized real estate described in the agreement to Paul and Pauline Yohe.

Since October of 1992, at the time of the completion of the drilling of the initial well, the Yohes attempted to convince Plaintiffs to drill additional wells. Plaintiffs refused to make this commitment. Beginning at that time, the Yohes precluded Plaintiffs from accessing the property; the Yohes erected barriers on access roads and made physical and verbal threats

to Plaintiffs' employees. A year later, in October of 1993, Plaintiffs attempted to install a lock on the gas well as a safety device. The Yohes refused to allow the Plaintiffs' employees to leave, however, until the lock was removed. As a result of these actions, Snyder averred that it was unable to complete the connecting pipeline from the well to the existing Peoples' pipe line, and, consequently, lost certain federal tax credits.

After a hearing on Plaintiffs' complaint, the trial court entered an adjudication and decree nisi which enjoined the Yohes from, *inter alia*, interfering with Plaintiffs' right to "drill, mine, produce, maintain, operate and/or transport the gas and oil produced from their well located on the Defendants' property," and interfering with the connection of the Snyder well to the existing pipeline. The Yohes filed post-trial motions, which were denied. A final decree was entered and this appeal followed. The Yohes raise the following issues for our review:

1. Did the oil and gas agreements create a fee simple title interest in the oil and gas estate?

2. Were the Yohe leaseholds properly unitized?

3. Did the oil and gas agreements set forth the agreement of the parties?

4. Does the pipeline right of way of the Peoples Natural Gas Company authorize the installation of a meter site and the receiving of gas into the pipeline?

 Our standard of review in equity actions is well established. A chancellor's finding of fact will not be disturbed absent an abuse of discretion, a capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings. *Sorace v. Sorace,* 440 Pa.Super. 75, 77–79, 655 A.2d 125, 127 (1995) (citing *Jersey Shore Area School District v. Jersey Shore Education Association,* 519 Pa. 398, 548 A.2d 1202 (1988)). A chancellor's conclusions of law are subject to stricter scrutiny. Unless the rules of law relied upon are palpably wrong or clearly inapplicable, however, a grant of injunctive relief will not be reversed on appeal. *Sorace.*

■ The Yohes argue that the interest granted by the lease agreements is neither a valid leasehold interest nor a valid fee title interest in the gas and oil estate. Instead, the Yohes claim, the interest is merely a tenancy at will in and to the oil and gas. We disagree.

■ The trial court concluded that Plaintiffs are the owners of the gas under the lessors' lands, and that the Plaintiffs' right in the surface of the land is in "the nature of an easement of entering and examination, with the right of possession arising where a particular place of operation should be selected, and the easement of ingress, egress, storage, transportation, etc. during the continuance of the operation." *Westmoreland etc. N. Gas Co. v. Ira DeWitt, et al.*, 130 Pa. 235, 18 A. 724 (1889). Interests in land can be severed and owned by different persons. The bundle of rights held by the owner of the fee can be broken into various other bundles such as the land, buildings on the land, easements, and leases and subleases. *See generally* 6 **Standard Pennsylvania Practice** § 5.2.

■ The Yohes own the land in fee simple, the largest estate in land implying absolute dominion. The Yohes, as owners in fee simple, granted a lease to Plaintiff for the minable gas and oil. A lease of minerals in the ground is **a sale of an estate in fee simple** until all the available minerals are removed; this leaves the lessor with only an interest in the royalties to be paid under the lease, which are personal property. *See Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A.2d 227 (1943). Specifically, the interest granted to lessee is a fee simple determinable; the lessor retains a reversionary interest. The interest reverts to the grantor upon the occurrence of a specified event. *See Higbee Corp. v. Kennedy*, 286 Pa.Super. 101, 428 A.2d 592 (1981); *see also Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A.2d 227 (1943) (a reversion is the undisposed remnant of an estate continuing in the grantor after a grant of a part of the grantor's interest).

Here, the specified event or events which must occur in order for the interest to revert back to the Yohes are set forth in the lease in paragraph 3.

3. **Term.** Lessee has the right to enter upon the Property to drill for oil and gas at any time within 90 days from the date hereof and as long thereafter as oil or gas or either of them is produced from the Property, or as operations continue for the production of oil or gas, *or* **as Lessee shall continue to pay Lessors $5.00 per acre per year as delayed rental,** *or* **until all oil or gas has been removed from the Property, whichever shall last occur.**

The trial court, therefore, correctly determined that Plaintiffs were the owners of fee title interest and not, as the Yohes claim, a tenancy at will. *Smith, supra. See also Barnsdall Appellant v. Bradford Gas Co.,* 225 Pa. 338, 342, 74 A. 207 (1909) ("the land itself is granted and demised, and not simply the right to enter upon and prospect . . . for oil or gas.").

▮▮▮ The Yohes also contend that the lease is void as it creates an interest in land which violates the rule against perpetuities. The Yohes point to paragraph 3, set forth above, and contend that the third and fourth disjunctive conditions transform this lease into a "no term" lease which is not enforceable under the law and violates the rule against perpetuities. The Yohes maintain that the third condition has no definable termination point and is effected solely at the discretion of the Plaintiffs/Lessees. We note, first, that this claim is waived. It was not presented in post-trial motions, and, consequently, was not addressed by the trial court. *See* Pa.R.C.P. 227.1; *Yeager v. Long,* 284 Pa.Super. 76, 425 A.2d 426 (1980); *see also Puleo v. Thomas,* 425 Pa.Super. 285, 624 A.2d 1075 (1993). Nevertheless, we find the argument meritless.

▮▮▮ The rule against perpetuities prohibits restraints on alienation or the fettering of the marketability of property over long periods of time by indirect restraints on alienation. *See Re Estate of Mather,* 410 Pa. 361, 189 A.2d 586 (1963). The rule against perpetuities applies only to the **vesting** of the

interest, not to the enjoyment of it. The rule, therefore, does not apply to the interest granted to the Plaintiffs, the fee simple determinable, because that interest is a vested interest. *Higbee, supra.* Upon the occurrence of certain events specified in paragraph 3 of the leases, the grantees' interest will automatically divest. *Id.*[2]

Additionally, upon closer examination of the lease language, we find that the Yohes' contention that the third and fourth disjunctive conditions in paragraph 3 of the lease create a "no-term" lease is meritless. That language is clarified by paragraph 19 of the lease and, in fact, at the conclusion of paragraph 3 the parties added the following: "(See # 19 on back)." Paragraph 19 provides:

> 19. **Additional Terms.** This lease shall become null and void should Lessee fail to commence drilling operations within one year[ ] of the first delayed rental payment. Lessee agrees to reclaim and remove all wellhead equipment, buildings, etc., along with plugging said well or wells at the completion of production upon Lessor's written request.

This language, along with the language of paragraph 3, indicates that the interest remains for so long as the Plaintiffs are drilling and/or producing gas and/or oil. It offends reason and the clear intent of the contract to surmise that the agreement may allow Plaintiffs to hold the land without engaging in drilling or production.

 Next, the Yohes claim that the leaseholds were not properly "unitized." The Yohes argue that the unitization was improper and effected only to hold onto the Paul and Pauline Yohe lease because drilling had not yet commenced on that 16 acre plot. The Yohes maintain that unitization was in bad faith, and carried out only to evade voiding the lease under paragraph 19.

---

**2.** Though not an issue of concern to the Yohes, we note that the rule against perpetuities does not apply to their interest, a possibility of reverter, because a reversion is a *vested* interest. *See Graybill v. Manheim Cent. School Dist.,* 175 Pa.Super. 415, 106 A.2d 629 (1954).

Unitization is specifically provided for in paragraph 4 of the agreements. It reads:

> 4. **Unitization.** Lessee is hereby granted the right to pool and unitize all or any part of the Property with any other lease or leases, land or lands, mineral estates, or any of them whether owned by Lessee or others, so as to create one or more drilling or production units. . . .

Here, the leases for both properties were recorded on November 15, 1991. The total acreage, the 16 acre Paul and Pauline Yohe lease and the 99 acre Agnes Yohe lease, was unitized on April 27, 1992. Drilling commenced in September of 1992. The voiding clause of paragraph 19, therefore, is not applicable here.

In their next issue, the Yohes argue [3] that their leases differ from the Coward lease, that Maxwell led them to believe that their leases would replicate the Coward lease. Upon delivery of the leases for signature, the Yohes contend that they complained about the differences. The Yohes argue that Maxwell "was putting one over on Mr. Yohe." Notwithstanding, the Yohes signed the agreements.

Where parties, "without any fraud or mistake have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of this agreement[.]" *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, 323, 126 A. 791 (1924). "All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence." *Union Storage Co. v. Speck*, 194 Pa. 126, 133, 45 A. 48 (1899).

---

**3.** We note that appellants' brief on this issue is devoid of relevant law. The argument merely states the distinctions between the leases at issue and the Coward lease and summarily concludes that this illustrates a lack of mutual assent. The appellants, therefore, are in clear violation of Pa.R.A.P. 2119(b). *See Harvilla v. Delcamp*, 521 Pa. 21, 555 A.2d 763 (1989); *Commonwealth v. Jackson*, 494 Pa. 457, 431 A.2d 944 (1981); *Curson v. Conshohocken Mun. Auth.*, 148 Pa. Commw. 386, 611 A.2d 775 (1992).

Furthermore, the lease agreements contained an integration clause, which provides, in pertinent part:

13. **Entire Contract.** No presumption shall be deemed to exist in favor of or against either party hereto as a result of the preparation and/or negotiation of this agreement. No inference or covenant shall be implied as to either party hereto since **the full contractual obligations and covenants of each party [are] hereby fully and expressly set forth.** (emphasis added).

The trial court aptly noted that the Yohes failed to produce clear and convincing evidence of fraud, accident or mistake. Consequently, the parol evidence rule barred any evidence of prior oral agreements or negotiations. *Gianni, supra; see also Bardwell v. The Willis Company,* 375 Pa. 503, 100 A.2d 102 (1953); *LeDonne v. Kessler,* 256 Pa.Super. 280, 389 A.2d 1123 (1978) (a party cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations). The fully integrated written agreements here supercede any prior oral agreements or representations, and the parol evidence rules bars any evidence which may alter or vary the terms of the written agreements. *Bardwell, supra.*

In their final claim, the Yohes argue that the right of way held by Peoples did not authorize either the installation of a meter site nor the receiving of gas into the pipeline. We disagree. The right of way agreement held by Peoples provides for a

right of way to lay, maintain, operate, change and remove pipe lines with necessary fittings and appliances for the transportation and regulation of water, oil or gas, and/or their constituents or products similar thereto, ...

Peoples sought to connect its transmission line to the Snyder pipeline for the purpose of transporting natural gas. Peoples was required to fit its transmission line with what is known in the industry as a "saddle" in order to transport natural gas through the transmission line. If the connection is not made, Peoples is prevented, in part, from providing a public service

in accordance with current public utility regulations. The Yohes' claim is contrary to the express terms and purposes of the right of way agreement; it is contrary also to public policy and the public utility regulations and purposes. *See* 52 Pa. Code § 60.1 *et seq.*

As a final point, appellee Snyder states in its brief that "this matter should be remanded to the Lower Court for its consideration and decision as to attorney's fees and costs." Snyder does not state that it sought fees in the trial court, nor does it make any further statement or argument to this court on this matter. This court may on its own motion award further costs "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. Appellee has not established conduct of this type, nor do we find evidence of such on the record. Accordingly, we deny Snyder's request for further costs.

Affirmed.