Richard E. SHARP and Miriam
Sharp, Appellants,

v.

CONEWAGO TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2002.
Decided Oct. 2, 2003.

Glenn C. Vaughn, York, for appellants.

Stacey R. MacNeal, York, for appellee.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge COHN.

This is an appeal from an order of the Court of Common Pleas of York County which, in a declaratory judgment action, struck down an amendatory ordinance that required mobile home parks, but not owners of single family residences, to connect to a public water supply, but concluded that Section 2612 of The Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 67612, allows assessments of mobile home parks to be calculated on the basis of Equivalent Dwelling Units (EDUs).

Appellants Richard and Miriam Sharp own a mobile home park in Conewago Township, York County, where they rent lot spaces to the owners of residential mobile homes. In exchange for the rental fee, the Sharps had been using their privately owned wells to provide water service to each of the mobile homes. The instant action arises as a result of the Township's construction of a public water system, and its subsequent efforts to require the Sharps to connect to the system and to charge the Sharps fees for each mobile home as part of the Township's efforts to finance the system. The Township enacted a series of ordinances during a two year period to require the connections and to authorize the fee assessments.

The Township enacted Ordinance No. 98–247 (Ordinance 1) on June 15, 1998. This ordinance established a public water district within the Township. For our purposes, Section 3 of Ordinance 1 is the critical section; it required all residential properties, as well as all mobile home parks and multi-unit residential properties, to be connected to the public water system. It also established fees for water use as well as a monthly surcharge.[1] Although

1. The relevant language in the Ordinance reads:
   (a) *Residential* All persons owning any building now erected within the Conewago Township Water District No. 1 occupied or intended for human habitation and accessible to the public water system ... shall, at their own expense, make connection of such buildings to the public water system. (Ordinance 1, Section 3(a)).
   Distinct from the residential building connection requirements of Section 3(a), the Ordinance contained a provision discussing the connection requirements of "Commercial, Industrial, Mobile Home Parks/Multi Unit Residential" properties. As with residential properties, the Ordinance required each of these types of property to connect to the water system. Specifically, Section 3(b) reads:
   (b) *Commercial, Industrial, Mobile Home Parks/Multi Unit Residential* All persons now or hereafter conducting or owning ... [a] mobile home park ... located within Conewago Township Water District No. 1 abutting any public street or easement in which is laid a public water main, shall, at their own expense, make connection of all such buildings, improvements, mobile homes and multi-unit residential structures to the public water system. (Ordinance 1, Section 3(b)). The Ordinance also contained a provision requiring property owners to disconnect any private water supplies once the property was connected to the public water system.
   Section 6 of the Ordinance, which addresses water service charges, provides that residential customers would be responsible for a surcharge of at least $8, but no more than $15 a month. The Ordinance contained a section discussing surcharge fees for Mobile Home Parks, providing that:

the Ordinance does not specifically indicate that this surcharge would be used to finance the construction of the public water system, it appears undisputed that this was, indeed, the purpose behind the surcharge.

The Township subsequently enacted Ordinance No. 99–251 (Ordinance 2), which *amended,* **inter alia,** Section 3(a) of Ordinance 1 by eliminating the mandatory connection requirement for existing residential property owners, and, instead, allowed such property owners to choose whether or not to connect to the system. Ordinance 2 did not alter the mandatory connection requirement for mobile home parks and multi-unit residential properties.[2]

One month later, the Township enacted Ordinance No. 990607–1 (Ordinance 3), which established a monthly surcharge of $14.00 per EDU for mobile home park and multi-unit residential customers, as well as a $14.00 per month surcharge for all residential customers, regardless of whether they were connected to the public water system.

In August of 1999, the Sharps received a form letter from the Township, addressed to "Property Owner," which essentially summarized the effect of the three Ordinances. The letter indicated that commercial properties were required to connect to the system, and that residential customers had the option of doing so. The letter also stated that residential customers, regardless of whether they are connected to the system, would be required to pay a $14 per month surcharge. The letter made no specific reference to mobile home parks or EDUs.

On March 14, 2000, the Sharps received another form letter, again addressed to "Property Owner," that reiterated the terms of the previous letter, but also noted that it served as the "official 'Connection Notice.'" (Letter from Township to Sharp, March 14, 2000.) The letter indicated that property owners connecting to the system had 90 days to do so, and those choosing not to connect had 30 days to provide proof to the Township that they could supply sufficient, safe water to their properties. As with the prior letter, this correspondence also made no specific reference to mobile home parks or EDUs. On June 21, 2000, the Township issued an invoice to the Sharps for $6,594, the quarterly surcharge for 157 EDUs (at $14 per

---

(b) *Mobile Home Park/Multi Unit Residential*

For the purposes of determining charges for a residential unit other than a single family home, the number of residential customers in a Mobile Home Park and Multi Unit Residential building shall be defined as the number of equivalent dwelling units (EDU's). For purposes of this Ordinance, EDU means the method used by the Township for calculating sewage volume capacity for all users in units of volume equivalent to that used by a typical single residential dwelling unit.

(Ordinance 1, Section 6(b)). Like the residential units, each EDU was to be charged a monthly surcharge in the $8 to $15 range.

**2.** Relevant portions of Ordinance 2 read:

Section 1. The following sections and subsections of Conewago Township Ordinance No. 98–247 [Ordinance 1] Section 3, are amended to read as follows:

Section 3. *Connections to water system*

*(a) Residential*

* * * *

(ii) *Existing Buildings.* All persons owning any building now erected within the Conewago Township Water District No. 1 that is occupied or intended for human habitation and accessible to the public water system shall *not* be required to connect to the public water system if and only if the owner provides to the Township sufficient proof of the supply of safe drinking water from an existing on-site private water system....

(Ordinance 2).

EDU per month).[3] The Sharps, thereafter, initiated a declaratory judgment action challenging the surcharges.[4]

The Sharps initiated the instant declaratory judgment action challenging Ordinance 1, as amended, on two grounds. First, the Sharps argued that the Ordinance is not uniform and denies equal protection by "requiring connection of ... single family mobile homes while exempting single family homes which are not in a mobile home park...." (Complaint at 5.) Second, the Sharps allege that the Township is not permitted to use EDUs as a basis to assess surcharges under Section 2612 of the Code, which provides only two methods for assessment, neither of which is the EDU method. Both the Sharps and the Township filed motions for judgment on the pleadings. The trial court ruled in favor of the Sharps as to the equal protection argument,[5] but against the Sharps as to the use of EDUs.[6]

Based upon its decision, the trial court entered the following: "A declaratory judgment [], that Ordinance 99–251 [Ordinance 2], by requiring connection of single family mobile homes while exempting single family homes is *invalid* and violative of 53 P.S. Section 67603." (Trial Court Or-

der at 2.) In the order, the trial court entered a declaratory judgment that authorized the Township to utilize EDUs in making assessments. The Sharps appealed to this Court. The Township did not file a cross appeal.

■ Before this Court, the Sharps raise two issues, although not in this order. They contend that, since the trial court agreed with them that the Township cannot treat mobile home owners differently from residential owners, which resulted in the court invalidating Ordinance 2, they do not have to connect to the water system and, consequently, cannot be required to pay any surcharges. They also assert that Section 2612 of the Code does not authorize assessments to be based upon the number of EDUs on the property.[7] The Township disagrees. We address the two issues in turn.

■ In addressing the Sharps' first argument, we must initially determine if the trial court correctly concluded that Ordinance 2 violated Section 2603, 53 P.S. § 67603. If so, we must then address the impact of the trial court's invalidation of Ordinance 2 on the vitality of the original Ordinance 1 provisions.

---

**3.** In their brief, the Sharps refer to their park as containing 127 EDUs. Therefore, it is not clear whether there are 157 or 127 EDUs within the park. However, because neither side has specifically raised this point, we need not address it.

**4.** In their brief, the Sharps indicate that this collateral declaratory judgment proceeding was initiated to challenge the surcharges set forth in Ordinance 3, and that it is still pending.

**5.** The trial court relied on our decision in *Vernon Township Water Authority v. Vernon Township*, 734 A.2d 935 (Pa.Cmwlth.1999) to conclude that Ordinance 2 was "invalid" and violated Section 2603 of the Code, 53 P.S. § 67603, because "it permits some property

owners, but not all, to opt out of connecting to the water system...." (Trial Court Opinion at 10).

**6.** The trial court relied on our discussion in *Curson v. West Conshohocken Municipal Authority*, 148 Pa.Cmwlth. 386, 611 A.2d 775 (1992) that authorized a surcharge/assessment under the benefits method, on the number of EDUs located on a property, rather than to count the property as a single commercial unit.

**7.** Our review of a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. *Kelso Woods Association, Inc. v. Swanson*, 753 A.2d 894 (Pa.Cmwlth. 2000).

We agree with the trial court that Ordinance 2 violated the provisions of Section 2603. Section 2603 pertinently provides that, "[t]he board of supervisors may by ordinance require that abutting property owners of a water system provided by the township or a municipal authority or a joint water board connect with and use the system." This Court has previously concluded that this Section affords a Township the option of requiring all property owners to connect to the water system or to allow each property owner to decide, individually, whether to connect. *Vernon Township Water Authority v. Vernon Township,* 734 A.2d 935 (Pa.Cmwlth.1999). In the instant case, the trial court correctly applied our holding in *Vernon* to conclude that Ordinance 2, by giving some, but not all, property owners the option not to connect to the water system, violated the authorizing language of Section 2603. As such, we find no error in the trial court's invalidation of Ordinance 2. We turn, now, to the main component of the first issue, specifically, what affect this invalidation of Ordinance 2 has on the vitality of the provisions of Ordinance 1.

The parties assert contrary positions as to the continuing vitality of Ordinance 1. The Sharps' position is that the trial court's order declaring Ordinance 2 invalid eliminated the requirement in Ordinance 1 that they connect to the water system and, with it, the obligation to pay the surcharge.[8] In contrast, the Township argues that the trial court decision, in striking Ordinance 2, which, itself, merely *amended* the language of Section 3(a) of Ordinance 1, had the effect of causing Ordinance 1 to continue as though Ordinance 2 had never been enacted. We agree with the Township's position.

In reaching this conclusion, we note that Ordinance 2 contained no language repealing Ordinance 1 but, instead, contained language indicating that it was amending specific provisions of Ordinance 1, and ratifying the remaining, unamended portions of Ordinance 1. Once the trial court found that Ordinance 2 substantively violated 53 P.S. § 67603, the amendments were rendered *void ab initio* and the original provisions found in Ordinance 1, not having been repealed, remained effective *in toto.* *Accord Bennett v. Sullivan County,* 29 Pa.Super. 120, 124 (1905) (concluding that substantive error in the statute precluded the statute from having become effective, noting that "[t]he act never became a law, and as such has no existence"). As Ordinance 1 required *all* abutting property owners to connect to the water system, and this requirement conforms with those set forth in Section 2603 as discussed in our *Vernon* decision, we conclude that the Sharps are required to connect to the water system. Also, since Section 3(a) of Ordinance 1 remained in effect, and this language required residential properties, including mobile homes, to connect to the system, the Sharps cannot avoid the obli-

---

8. The Sharps offer no meaningful arguments as to whether the trial court opinion requires or does not require the mobile homes within the Sharps' property to connect to the system. The Sharps offer just the conclusory statement that "Sharp is not required to connect to the water system by virtue of the Trial Judge's Order in this case." (Sharps' Brief at 16.) From this statement, we infer that their argument is based upon the ratification language of Section 2 of Ordinance 2. This language provides that "[a]ll terms, provisions and conditions of Ordinance 98–247 [Ordinance 1] not amended by the provisions hereof are ratified, restated, confirmed and remain in full force and effect." (Ordinance 2). It seems that the Sharps' position is that the entirety of Ordinance 1 would have been effectively stricken as it was incorporated into Ordinance 2, which was itself stricken in its entirety by the trial court.

gation to pay the surcharge on this theory.[9]

■ We turn, now, to the Sharps' second argument, specifically whether the trial court erred in authorizing the Township to use EDUs in assessing the surcharge to recover the costs of the water system's construction. The Sharps correctly cite Section 2612 of the Second Class Township Code, 53 P.S. § 67612, as providing two methods for determining the amount of assessment. The applicable statutory language currently reads:

> The board of supervisors may provide for the payment of the cost of water lines or water systems in the township or in districts thereof by an assessment upon the properties accommodated or benefited by one of the following methods:
>
> (1) By an assessment under a resolution or ordinance of the board of supervisors of each lot or piece of land in proportion to its frontage abutting on the water mains, allowing an equitable reduction in the case of corner properties and unusually shaped properties or in the case of properties abutting on more than one main as the resolution or ordinance may specify.
>
> (2) By an equal assessment on all properties abutting on the mains in proportion to the total cost of construction. The amount of the charge on each property shall be determined by the board of supervisors.

53 P.S. § 67612. Both parties agree that the Township did not use the "frontage" method. Therefore, it is this second,

"equal assessment" method, which is of particular concern in this case.

The Sharps argue that the Township's use of EDUs is not appropriate under the equal assessment method. According to the Sharps, under a "plain reading of the statute," use of the word "equal" means that "all benefited properties will have the same assessment." (Brief at 13.) The Sharps believe that the Township, under its previous set of Ordinances, "sought to impose a $14 per EDU surcharge for some, but not all properties" and, therefore, this surcharge would not be levied on "each and every property." (Brief at 15.) The Sharps argue that because all property owners would not have to connect and, therefore, not all would have to pay the assessment, it is not an "equal" assessment.

However, as previously discussed, pursuant to Ordinance 1, *all* abutting property owners must connect to the system and must pay the $14 surcharge. The Sharps' argument, therefore, must fail. Although not specifically articulated in their brief, the Sharps may also be arguing that a $14 surcharge per EDU is not a $14 surcharge per "property" and, thus, is not "equal" under the statute. The term "equal" is not defined in the statute. "Equal" can be defined as "like for each member of a group, class" or "like in quality, nature and status." (Merriam–Webster's Collegiate Dictionary, 10th Edition (2001)). Under the Township's plan, each residence is being treated alike throughout the water district, *i.e.*, each is required to pay $14 per month.[10] Using the EDU method simulta-

---

9. The parties do not, in this appeal, argue that Ordinance 1 violates any applicable statutory provisions.

10. The Sharps, in the uniformity portion of their Complaint, specifically sought a declaration to the effect that residential homes were analogous or equivalent to trailers in a mobile

home park. The trial court agreed with the Sharps and, as discussed earlier, issued an order striking the amendatory language of Ordinance 2 for inappropriately distinguishing between the two types of residences. Having obtained the requested declaration, the Sharps, in this portion of their argument,

neously ensures that similarly situated property owners pay an equal fee that is proportionate to the water system as a whole, fulfilling the requirement in Section 2612 that there be "an equal assessment on all properties in proportion to the total cost of construction."

The Sharps also seem to argue that every property must be assessed the same amount, *i.e.*, $14. Under this interpretation, each resident of a mobile home on the Sharps' property would pay a surcharge of 11 cents per month, (representing the $14 fee divided by the 127 residences the Sharps state are on their property), while residents in other dwellings would pay $14 per month. To allow residents of single family homes to pay more than one hundred times that of residents of single family homes within a mobile home park, presents an inequality in contravention to the language of Section 2612. Thus, adopting the Sharps' analysis here would create the very type of uniformity problem that they, themselves, were successful in challenging in their other issue. In contrast, use of the EDU method helps to ensure that *each* single family residence, whether an individual apartment, a "mobile" home, or a "non-mobile" home, is treated equally for assessment purposes as required by Section 2612. Accordingly, we reject the Sharps' position that using EDUs necessarily reflects an unequal assessment in

violation of the provisions of Section 2612.[11]

Because we conclude that the Conewago Township Ordinance requires the Sharps to connect the mobile homes on their property to the water system, and that EDUs may be used to establish equal assessments of residences, we affirm the trial court's order.

### *ORDER*

**NOW,** October 2, 2003, the order of the Court of Common Pleas of York County in the above-captioned matter is hereby affirmed.

### CONCURRING AND DISSENTING OPINION BY JUDGE FRIEDMAN.

I agree with the majority that the order of the Court of Common Pleas of York County (trial court) declaring Ordinance No. 99–251 (Ordinance 2) invalid had the effect of causing Ordinance No. 98–247 (Ordinance 1) to continue as though Ordinance 2 never had been enacted. However, I do not agree that section 2612 of The Second Class Township Code (Code)[1] allows Conewago Township (Township) to use Equivalent Dwelling Units (EDUs) to assess the public water surcharge for the mobile home park owned by Richard E. Sharp and Miriam Sharp (the Sharps).

Section 2612 of the Code provides, in pertinent part, as follows:

now assert, in conflict with their position on the equal protection issue, that a residential trailer is not equivalent to a residential single family home. They cannot have it both ways. By their victory in the uniformity argument, in a way, the Sharps have been hoisted by their own petard as to this second issue.

11. The Sharps correctly state that Section 2612 no longer provides for the benefits method of assessment, citing our decision in *Catholic Cemeteries Association of Diocese of Pittsburgh v. Township of Pine*, 794 A.2d 435 (Pa. Cmwlth.2002). Under the former statute, assessments could be based upon the benefit

conferred on the property by the water system. As stated in *Catholic Cemeteries*, the current equal assessment language in Section 2612 replaced the benefits language. Because the Sharps do not argue that EDUs could only be used with a benefits method of assessment, or that the elimination of the benefits method prohibits the use of EDUs, we do not address the impact of this change on the use of EDUs.

1. Act of May 1, 1933, P.L. 103, *added by* section 1 of the Act of November 9, 1995, P.L. 350, 53 P.S. § 67612.

The board of supervisors may provide for the payment of the cost of water lines or water systems in the township or in districts thereof by an assessment upon the properties accommodated or benefited by one of the following methods:

. . . .

(2) By an equal assessment on all *properties abutting on the mains* in proportion to the total cost of construction. The amount of the charge on each *property* shall be determined by the board of supervisors.

53 P.S. § 67612 (emphasis added).

Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a), states that words and phrases shall be construed according to rules of grammar and according to their common and approved usage. Here, the word "properties" in section 2612 of the Code refers to "Land, and generally whatever is erected or growing upon or affixed to land." Black's Law Dictionary 1218 (6th ed.1990). Mobile homes are *not* erected upon land, do *not* grow upon land and are *not* affixed to land. *See Anstine v. Zoning Board of Adjustment*, 411 Pa. 33, 190 A.2d 712 (1963) (stating that, if the wheels of a mobile home are removed and the mobile home is bolted to a concrete block foundation, the mobile home will be rendered immobile and will become a permanently affixed structure). Thus, the calculation of an equal assessment on "properties" abutting the mains does not involve the number of mobile homes on a property.

When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. Section

1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b). I submit that the statutory language in section 2612 of the Code is clear. The majority does not explain how the phrase "properties abutting on the mains" could mean "EDUs abutting on the mains."

Even if such a construction were possible, I suspect that many of the mobile homes in the Sharps' mobile home park do *not* abut the water main. Only the mobile homes closest to the street containing the water main would be "abutting on the mains." *See* Black's Law Dictionary 11 (6th ed.1990) (defining "abut" to mean "touch" or "border on"). Thus, *if* the Township were correct in assessing EDUs, the Township could assess *only* those mobile homes on the Sharps' property that "abut" the water main.[2] For whatever reason, the majority ignores this critical statutory language.

For the foregoing reasons, I would reverse.

---

2. Considering that all of the mobile homes would benefit from the public water supply, I note that such a result is absurd, and, in ascertaining the intention of the legislature, we must presume that it does not intend a result that is absurd. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1).