579 A.2d 996

NEWLIN CORPORATION and Somerset of
Virginia, Inc., Petitioners,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF
ENVIRONMENTAL RESOURCES, Respondent.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF
ENVIRONMENTAL RESOURCES, Petitioner,

v.

NEWLIN CORPORATION and Somerset of Virginia,
Inc., Respondents.

Commonwealth Court of Pennsylvania.

Argued June 12, 1990.

Decided August 10, 1990.

Bruce L. Thall, Abramson, Cogan, Kogan, Freedman & Thall, P.C., Philadelphia, for petitioners/respondents, Newlin Corp. and Somerset of Virginia, Inc.

Kenneth A. Gelburd, Deputy Regional Chief Counsel, for respondent/petitioner, Com. of Pennsylvania, Dept. of Environmental Resources.

Before CRAIG, President Judge, PALLADINO, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This case comes before us as a cross-petition for review of an October 18, 1989 adjudication and order of the Environmental Hearing Board (EHB) regarding an abatement order issued by the Department of Environmental Resources (DER), petitioners and cross-respondents, to, *inter alia*, Somerset of Virginia, Inc. (Somerset) and Newlin Corporation (Newlin), respondents and cross-petitioners.[1]

An October 11, 1978 agreement created a joint venture known as Strasburg Landfill Associates (SLA) comprised of Newlin, Somerset, and Eco–Waste, Inc. to acquire a landfill site located in Newlin Township, Chester County. Newlin and Somerset each held a 25% interest in the SLA joint venture, while Eco–Waste, Inc. held a 50% interest. SLA owned the fee constituting the landfill site and pursuant to a lease with SLA, Strasburg Associates, a separate and distinct entity, operated the landfill.

The landfill was in operation until DER found conditions at the site to be in violation of environmental regulations and issued an administrative order dated May 11, 1983 suspending the site permit and requiring remedial and pollution abatement measures at the site. After conditions at the site worsened, DER issued a second abatement order, *ex parte*, on September 21, 1983 to a long list of entities and persons connected with the site. Newlin and Somerset were among the listed entities. The order required the named entities and persons to forever undertake measures to remedy the condition at the site where leachate was being discharged from the landfill.

---

1. A February 16, 1990 opinion and order of this Court dismissed DER's cross-petition for review with respect to David Ehrlich and Richard Winn, individuals and officers of Newlin Corporation.

The facts in this controversy are not in dispute. Neither is it disputed that an environmental violation occurred. The parties primarily challenge liability as to responsibility for abatement and compliance requirements as determined by the EHB. The EHB determined that two of the joint venturers, Newlin and Somerset, were liable under § 316 of The Clean Streams Law [2] for surface and groundwater contamination emanating from the landfill. Newlin and Somerset appeal this determination. The EHB also ruled that the DER failed to establish that Newlin and Somerset violated the Solid Waste Management Act [3] at the landfill and hence, the issuance of the abatement order under the Solid Waste Management Act by DER was an abuse of discretion. DER appeals this determination of the EHB.

In reviewing EHB decisions, we are limited to determining whether the EHB committed any errors of law, constitutional violations, or whether any necessary findings of fact are unsupported by substantial evidence. *Pennsylvania Game Commission v. Department of Environmental Resources*, 97 Pa.Commonwealth Ct. 78, 509 A.2d 877 (1986), *aff'd*, 521 Pa. 121, 555 A.2d 812 (1989); Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

## I. NEWLIN AND SOMERSET APPEAL

### A. *Preclusion of Liability*

■ Newlin and Somerset argue that the Board erred in imposing liability upon them because liability is precluded under the Clean Streams Law, the law of joint ventures, and the SLA joint venture agreement. Specifically, Newlin and Somerset argue that because entities comprising a joint venture do not become owners of property owned by the joint venture, the Board had no basis for imposing liability upon them as landowners under § 316 of the Clean Streams Law.

2. Act of June 22, 1937, P.L.1987, *as amended*, 35 P.S. § 691.316.
3. Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101–6018.-1003.

The EHB determined that Newlin and Somerset were within the definition of "landowner" under § 316 of the Clean Streams Law because they were joint venturers in SLA, the joint venture owning the land which was the site of the landfill. In support of their three-part argument that liability is precluded, Newlin and Somerset argue that in construing joint venture law, it is SLA, and not Newlin and Somerset, which holds title to, or a proprietary interest in, the land underneath the landfill. They further argue that joint venturers do not own the property of the joint venture. Further, as neither Newlin nor Somerset had more than a 25% interest in the joint venture, they lacked the authority to control the subject matter of the enterprise in that neither had the power to: 1) terminate or modify the lease with Strasburg Associates; 2) hire or fire personnel operating the landfill; or 3) speak for SLA in connection with management or operation of its affairs. Newlin and Somerset assert that because a joint venture is a relationship voluntarily assumed, the status of the joint venture arises wholly from the contract and hinges upon the terms and conditions of that contract. Alleging that their joint venture agreement did not afford them control over subject matter, they deem liability precluded against them.

In confronting the first argument posited by Newlin and Somerset, we initially refer to § 316 of the Clean Streams Law. This section provides, in pertinent part:

Whenever the department finds that pollution or a danger of pollution is resulting from a condition which exists on land ... the department may order the landowner or occupier to correct the condition.... For the purpose of this section, "landowner" includes any person holding title to or having a proprietary interest in either surface or subsurface rights. 35 P.S. § 691.316

Limited case law construing this particular provision of the Clean Streams Law exists. However, this Court has recently considered the nature of the interest in land sufficient to support an abatement order and impose liability under § 316 of the Clean Streams Law in *Western Pennsylvania*

*Water Co. v. Department of Environmental Resources,* 127 Pa.Commonwealth Ct. 26, 560 A.2d 905 (1989). In *Western Pennsylvania Water* we determined that an easement for the purpose of laying a water pipe line was sufficient interest in land to impose liability upon the water company under the aegis of § 316 of the Clean Streams Law.

In the instant case, the EHB undisputably found that an environmental condition existed on the land owned by SLA. Newlin and Somerset as joint venturers in SLA, were well situated to remedy the harmful conditions that existed there. In *National Wood Preservers Inc. v. Department of Environmental Resources,* 489 Pa. 221, 414 A.2d 37 (1980), the Supreme Court determined that an EHB finding that pollution resided under appellant's land, which could feasibly be removed, constituted a reasonable basis for issuance of a corrective order. In light of the EHB's findings, stipulations by the parties as to ownership of land by the SLA joint venture, and the above cited case law, we hold that § 316 of the Clean Streams Law encompasses joint venture entities so as to constitute the joint venturers landowners and accordingly, the EHB's imposition of liability upon Newlin and Somerset under § 316 will not be disturbed. *Blumenschein v. Housing Authority,* 379 Pa. 566, 109 A.2d 331 (1954).

Joint venture law is summarized in *Snellbaker v. Herrmann,* 315 Pa.Superior Ct. 520, 526–257, 462 A.2d 713, 716 (1983), which states:

A joint venture is not a status created or imposed by law; it is a relationship voluntarily assumed and arising wholly from contract. *2 Williston on Contracts 557, § 318A (3rd ed. 1959).* Whether persons have engaged in it must depend primarily upon their intention as expressed in agreement and the construction they have placed upon it. *"To constitute a joint venture certain factors are essential: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or*

*money; (2) profits must be shared among the parties; (3) there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction."* McRoberts v. Phelps, 391 Pa. 591, 599, 138 A.2d 439, 443–444 (1958). A joint venture partakes in many ways of a partnership, the principal difference being that it usually, though not necessarily, applies to a single transaction instead of being formed for the conduct of a continuing business. *West v. Peoples First National Bank & Trust Co.,* 378 Pa. 275, 281–282, 106 A.2d 427, 431 (1954). (Emphasis added.)

As enunciated in *Snellbaker,* four essential factors are inherent in the definition of a joint venture. A review of the record in the instant case reveals that each of these four elements were complied with. The May 23, 1978 SLA joint venture agreement[4] reveals that the parties, Newlin, Somerset and Eco–Waste, Inc., "desire to associate themselves to carry on as *co-owners* a sanitary landfill business for profit." (Emphasis added.) The agreement further states that "(e)ach Joint Venturer shall have the right to participate fully in the management of the Joint Venture...."

If, as Newlin and Somerset assert, "the status of each joint venture and joint venturer hinges upon the terms and conditions of the contract among and between the joint venturers,"[5] the SLA joint venture agreement clearly provides that Newlin and Somerset are co-owners who 1) contributed to the landfill venture; 2) shared in the profits of the venture; 3) maintained a joint proprietary interest and a right of mutual control; and 4) were involved in a single landfill enterprise. It then follows that they had a proprietary interest in the landfill and are "landowners" within the scope of § 316 of the Clean Streams Law.

4. See Hearing Exhibit E–1.
5. See April 24, 1990 brief of Newlin and Somerset at p. 23.

## B. *Constitutional Violations*

 Newlin and Somerset raise two classes of constitutional violations stemming from the issuance of the abatement order by the DER. First, they argue due process violations due to: 1) absence of notice and hearings, and 2) commingling of prosecutorial and adjudicative functions. Second, Newlin and Somerset raise a just compensation violation argument predicated upon the Fifth Amendment which precludes taking of private property for public purpose absent payment of just compensation.

We initially note that Newlin and Somerset failed to raise these constitutional claims to the EHB. Newlin and Somerset argue that since the EHB is an administrative board within the DER, constitutional claims could not be adjudicated before it. This argument is unpersuasive. As Newlin and Somerset failed to raise these constitutional objections before the EHB, they are precluded from raising them for the first time before this Court. Section 703 of the Administrative Agency Law, 2 Pa.C.S. § 703; *A.H. Grove & Sons, Inc. v. Department of Environmental Resources,* 70 Pa.Commonwealth Ct. 34, 38 n. 2, 452 A.2d 586, 588 n. 2 (1982).

## II. DER APPEAL

 DER asserts, in a single paragraph, that Newlin and Somerset are liable for abatement of environmental conditions at the site under The Administrative Code[6] in combination with the Solid Waste Management Act as the conditions constitute public nuisances. This assertion is not further expanded upon by DER. It is well established that, when issues are not properly raised and developed in briefs, when the briefs are inadequate or defective because the contention of appellant is not adequately developed to present the issue for review, we shall not consider the merits thereof. Pa.R.A.P. 2101; *Wicker v. Civil Service Commission,* 74 Pa.Commonwealth Ct. 548, 460 A.2d 407

6. The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §§ 51–732.

(1983); *Commonwealth v. Sanford,* 299 Pa.Superior Ct. 64, 445 A.2d 149 (1982). In accord with established case law and the rules of appellate procedure, DER's appeal from the portion of the Board's order under the Solid Waste Management Act and Administrative Code is dismissed.

Similarly, DER contends, in a six-line sentence devoid of any authority whatsoever, that the Board erred in not taking notice of its own rulings and of facts contained in prior proceedings before the Board. For the same reasons as previously enunciated, we will not consider the merits of this assertion. *Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595 (1981); *Wicker; Sanford.*

Having addressed the issues of Newlin and Somerset, and the DER[7] presently before us for review, we hereby conclude that Newlin and Somerset are liable as landowners under § 316 of the Clean Streams Law; DER's appeal as to liability of Newlin and Somerset under the Administrative Code in conjunction with the Solid Waste Management Act is dismissed; the constitutional violations as alleged by Newlin and Somerset were waived. The order of the EHB is affirmed.

## ORDER

AND NOW, this 10th day of August, 1990, the October 18, 1989 order of the Environmental Hearing Board is hereby affirmed.

---

7. DER's motion to strike the brief and reproduced record of Newlin and Somerset for noncompliance is dismissed as the request was made in the counterstatement of the case and was not properly raised in the statement of questions involved. Pa.R.A.P. 2116(a).