595 A.2d 1205

**Vivian E. ARASI, Appellant,**

**v.**

**NEEMA MEDICAL SERVICES, INC., Appellee,**

**Vivian E. ARASI, M.D., Appellee,**

**v.**

**NEEMA MEDICAL SERVICES, INC., Appellant.**

Superior Court of Pennsylvania.

Submitted June 5, 1991.

Filed Aug. 1, 1991.

Reargument Denied Sept. 23, 1991.

Stephen D. Wicks, Altoona, for appellant in No. 1683 and appellee in No. 1684.

John W. Heslop, Jr., Altoona, for appellant in No. 1684 and appellee in No. 1683.

Before OLSZEWSKI, HUDOCK and HOFFMAN, JJ.

HUDOCK, Judge:

This is an appeal by Vivian Arasi, M.D., (Dr. Arasi), and a cross-appeal by NEEMA Medical Services, Inc., (NEEMA), from a judgment awarding Dr. Arasi restitution damages in her claim against NEEMA on a theory of promissory estoppel in the amount of $27,000. Post-trial motions were timely filed and denied by the trial court and these appeals followed.[1]

Dr. Arasi claims in her appeal that she should have been awarded damages representing benefit-of-the-bargain rather than restitution. NEEMA, in its appeal, claims several errors by the trial court: (1) promissory estoppel was an improper basis for this action; (2) it was improper to sequester the defense witnesses at trial; (3) the trial court should have granted a directed verdict; (4) the restitution damage figure was incorrect; and (5) Dr. Arasi should not

---

1. NEEMA alleges in its response to Dr. Arasi's brief that her appeal should be quashed as untimely filed. We note that the order awarding restitution damages following the jury verdict in favor of Dr. Arasi was decided by the court on March 12, 1990, but the order was not entered until October 11, 1990, after denial of her post-trial motions. Dr. Arasi filed her notice of appeal on October 22, 1990. Pa.R.A.P., Rule 903, 42 Pa.C.S.A., provides, in pertinent part:

    (a) General Rule. Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken.

    Dr. Arasi filed her notice of appeal within the 30 day requirement here.

have been permitted to testify to the negotiations between NEEMA and herself since a written agreement with integration clause arose from those negotiations.

The facts in this case as summarized by the trial court are:

> [Dr. Arasi] is a physician hired by [NEEMA] to fill a staff position at the Altoona Center. [Dr. Arasi] received her medical education in Nigeria. At the time [Dr. Arasi] signed the employment contract with [NEEMA], she was not licensed to practice medicine in the Commonwealth of Pennsylvania. [NEEMA] was aware of the fact that [Dr. Arasi] did not have a Pennsylvania license, but nevertheless had [Dr. Arasi] execute an employment contract in October of 1985, and then allowed her to begin an orientation period on November 1, 1985.
>
> During contract negotiations, [Dr. Arasi] informed [NEEMA] that she had experienced delays in obtaining licenses in other states because of difficulty in communicating with her medical school in Nigeria. Mr. Rick Robinson [NEEMA's recruiter] told [Dr. Arasi] that [NEEMA] employed a person who could help her expedite the licensing process. [Dr. Arasi] received a letter dated December 20, 1985 from [NEEMA] in which she was informed that unless she received her license by December 24, she would be terminated. [Dr. Arasi] testified that had she known at the outset a licensure deadline of December 24 was going to be placed on her, she would not have accepted the position with [NEEMA]. [Dr. Arasi] did not receive her license by the deadline and was terminated as of December 24, 1985.

(Trial Court Opinion, 9/28/90, at 3) (citations omitted). Before we can address the merits of these cross-appeals, we must first characterize the agreements between Dr. Arasi and NEEMA.

First, it is clear from the record that Dr. Arasi signed a subcontractor agreement to work as a physician in the Altoona Center, a facility run by the Commonwealth of Pennsylvania and serviced with personnel under contract

through NEEMA. This subcontractor agreement was to cover the term beginning November 1, 1985, through June 30, 1987. An amendment to the agreement, executed at the time of the original agreement, provided for compensation in the amount of $52,000 for the period November 1, 1985, through October 31, 1986, and $54,000 thereafter until the completion of the term. Section 1.02 of the subcontractor agreement states:

> Subcontractor is a duly qualified and *licensed* physician, having had experience in the operation of facilities similar to Ebensburg and Altoona Centers and the rendition of medical care. Subcontractor must be acceptable to Ebensburg and Altoona Centers. If for any reason, subcontractor is not acceptable to Ebensburg and Altoona Centers, whether justified or not, this agreement may be terminated at the option of [Commonwealth of Pennsylvania].

(Complaint, Exhibit A) (emphasis added).

■ Second, the trial court found that there was an oral understanding between NEEMA and Dr. Arasi that Dr. Arasi should come to the Altoona Center, despite the lack of her medical license in Pennsylvania, provided she attempt to procure that license as soon as possible.[2] The trial court also found that Dr. Arasi rented her home in Maryland to tenants in a long term lease, moved to Pennsylvania, bought a townhouse, and began work at the Altoona Center on November 1, 1985. Dr. Arasi understood that NEEMA was anxious to fill the vacant position and understood that it could take time to obtain the necessary records to com-

---

2. NEEMA argues that the trial court erred in permitting Arasi to testify concerning the understanding that she would be permitted to remain at work until licensing was complete. In effect, NEEMA's argument is that the trial court permitted parol evidence to be admitted despite the presence of a signed, integrated agreement. Because we find that there were two agreements present, the written subcontractor agreement and the oral agreement concerning licensure, we do not find that parol evidence is an issue in this case. The agreement under question in this appeal is the oral one concerning work while waiting for licensure. It was proper for the trial court to permit testimony on that agreement. We therefore decline to entertain an analysis of parol evidence on this issue.

plete Dr. Arasi's licensure. Dr. Arasi understood that she would be permitted to work at the facility, performing duties which did not require a license, for a reasonable time until she obtained her license. It is this second agreement which is the subject of this appeal. The parties' arguments in these appeals attempt to combine the subcontractor agreement with the understanding of work while licensing was being obtained. They are two distinct agreements, as the trial court correctly held. We have been unable to locate a decision of this Court, or one of the Supreme Court, which deals with this issue directly. We are persuaded, however, by the reasoning in the Commonwealth Court's recent decision in *Travers v. Cameron County School District*, 117 Pa.Commw. 606, 544 A.2d 547 (1988). In *Travers*, the court dealt with an Ohio teacher who was hired to fill a physical education position with a Pennsylvania school district. Travers was interviewed for the position, which also included extracurricular assistant football and track coaching duties. He was told that he was qualified for the position and offered the position. The school district also told Travers that it would file the necessary papers to obtain his Pennsylvania teaching certificate. Travers signed a two-year temporary professional employee contract, moved to Pennsylvania, and began his duties under the contract. Shortly after the school year began, the school district informed Travers that he was not qualified for the position and would have to enroll in courses to acquire the necessary credits before he could get his Pennsylvania teaching certificate. The school district informed Travers, at that time, that if Travers failed to obtain the necessary credits by the second semester, his contract would be cancelled. The school district gave Travers an unpaid leave of absence for the semester in question, but by the time Travers was informed of his lack of qualifications, the courses he needed had already begun.

Travers was able to establish that the school district had orally agreed that he was qualified for the position when he was hired and that the school district told Travers that it

would take care of the necessary paperwork. In reliance on that understanding, Travers accepted the position and moved to Pennsylvania, foregoing other employment or the pursuit of his teaching certificate on his own. The Court in *Travers* noted:

> It is clear that [Travers'] inability to qualify for the certification makes his contract with School District unenforceable. The contract [Travers] signed contains a provision stating: "This contract is subject to the provisions of the Public School Code of 1949 ... and amendments thereto, regarding all qualifications and certifications as required therein." Section 1252 of the Public School Code of 1949 provides that "[n]o person shall teach in a public school in the Commonwealth unless he has met the certification requirements...."

*Id.*, 117 Pa.Commw. at 612, n. 2, 544 A.2d at 550 n. 2. The Court properly considered the contract of employment separate from the oral understanding that the school district considered Travers qualified and would pursue certification on his behalf.

Applying this analysis to our present situation, Dr. Arasi's subcontractor's agreement was unenforceable until she obtained her Pennsylvania medical license. Similarly, her understanding of work for a reasonable time until licensing is a separate agreement which we must examine independently of the written subcontractor agreement.

The Court in *Travers* then discussed the understanding between Travers and the school district.

> [Travers] alleges that School District assured him that he was qualified as a physical education teacher and promised to prepare and submit the requisite Pennsylvania certification applications if [Travers] accepted the position. [Travers] claims that as a result, he was induced to accept the physical education job, to move to Emporium, Pennsylvania from Cleveland, Ohio, and to actually begin work. It may be inferred from this that [Travers] discontinued further job search and forbore from obtaining the requisite certification himself. [Travers] alleges that by the time the School District informed

him that it could not obtain any type of certification for him because he was not qualified, the classes he needed to obtain certification were already well underway.

*Id.,* 117 Pa.Commw. at 613–14, 544 A.2d at 551.

We recently restated the elements of promissory estoppel in *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, 539 A.2d 1298 (1988) *alloc. den.,* 521 Pa. 606, 555 A.2d 116 (1988):

(1) Misleading words, conduct or *silence* by the party against whom the estoppel is asserted,

(2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel, and

(3) no duty of inquiry on the party seeking to assert estoppel.

*Id.,* 372 Pa.Superior Ct. at 496, 539 A.2d at 1306 (emphasis added). The Court in *Travers* found that Travers had stated a cause of action for promissory estoppel and quoted the Restatement (Second) of Contracts § 90 which provides in part:

Promise Reasonably Inducing Action or Forbearance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Id.,* 117 Pa.Commw. at 613, 544 A.2d at 550–51.

Travers sought not to enforce the school district's promise to obtain his certification because he could not do that until he had completed the requisite qualifications. Instead, Travers sought:

damages based on the actual amount of money he expended in negotiating for the job and the amount of money he would have received in actual salary and benefits for one year's employment with School District. This is consistent with the intent of promissory estoppel to prevent injustice.

*Travers,* 117 Pa.Commw. at 614 n. 5, 544 A.2d at 551 n. 5. The Court then cited Comment d to Restatement (Second) of Contracts § 90:

A promise binding under this section is a contract, and full-scale enforcement by normal remedies is often appropriate. But the same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise.... Unless there is unjust enrichment of the promisor, damages should not put the promisee in a better position than performance of the promise would have put him.

*Id.* Travers was essentially claiming restitution damages, but he was also claiming salary for a year when he had only been performing his duties for a few days. This would seem to be benefit-of-the-bargain damages, but, upon closer examination, this may not have been the case. The court did not address the issue of damages because this proceeding was at a preliminary stage. But given the school calendar, and the normal hiring of teachers, it is reasonable to assume that teachers would only be hired once a year, and to put Travers back in the position he would have been in if he had not accepted the position with the school district, may have included salary for that one year period.

██ In the present situation, the trial court held:

[Dr. Arasi] was led to believe, from negotiation statements of [NEEMA's] employees, that licensure would pose no problem to [Dr. Arasi's] accepting a job with [NEEMA]. [Dr. Arasi] expressed her concern to [NEEMA] that the licensing process could be lengthy because of the difficulty in communicating with the foreign medical school. [NEEMA] assured [Dr. Arasi] that they would assist her with licensing and that her lack of Pennsylvania licensure would pose no threat to her employment. In other words, [NEEMA] so wanted to hire [Dr. Arasi] that they were willing to wait for her to

receive a Pennsylvania license. Thus, the first element of a promissory estoppel action is satisfied. [NEEMA] made the assurances with respect to licensure in order to convince [Dr. Arasi] to accept the job.

The second criterion is met when [Dr. Arasi], relying on [NEEMA's] promise, accepted the position and moved to Pennsylvania to begin working. [Dr. Arasi] incurred expenses associated with the move from Maryland to Pennsylvania. These expenses would not have been incurred had [Dr. Arasi] known that licensing would pose a problem to her job with [NEEMA]. [Dr. Arasi] also gave up her job in Washington, D.C. in order to take the job in Altoona. [Dr. Arasi] relied on the promises of [NEEMA], and suffered losses when [NEEMA] failed to live up to their promises.

*　　*　　*　　*　　*　　*

The third criterion for promissory estoppel involves preventing injustice by enforcing the promise.... In this matter, the jury concluded that Dr. Arasi's reliance was entitled to legal protection.

(Trial Court Opinion, 9/28/90, at 5–6). NEEMA asserts, however, that there is no promissory estoppel by silence, and that there was never any oral or written agreement to permit Dr. Arasi to work until she was licensed. NEEMA's understanding of the law of promissory estoppel is misplaced because, as *Rinehimer, supra,* points out, even the silence of the promisor may be binding.

■ Having found that Dr. Arasi has established promissory estoppel, the issue of what damages are appropriate must next be resolved. Dr. Arasi claims she is entitled to benefit-of-the-bargain damages rather than the court-awarded restitution damages. As *Travers* indicates, the written agreement, in our case the subcontractor agreement, is unenforceable until Dr. Arasi obtains her license. Furthermore, Section 1.02 indicates that the Commonwealth, which runs the Altoona facility, could terminate Dr. Arasi for any reason at any time. We agree with the trial court's analysis which reads:

We find the damages proposed under the benefit-of-the-bargain measure to be totally inconsistent with the theory of promissory estoppel. This measure essentially enforces the terms of the employment contract by awarding [Dr. Arasi] the wages that she would have earned had she worked out the term of the contract. The promise that is the basis of this lawsuit is not that [Dr. Arasi] would remain in [NEEMA's] employ for the duration of the contract, but rather that [Dr. Arasi] would remain employed until she obtained her license. It is not reasonable for [Dr. Arasi] to expect that she would be entitled to the enforcement of an employment contract whose terms provided that she could be dismissed at any time and without cause. An award under the benefit-of-the-bargain measure would put [Dr. Arasi] in a better position than performance of the promise would have put her in.

(Trial Court Opinion 3/13/90, at 8). We are persuaded that the trial court awarded the correct measure of damages when it awarded restitution damages in the amount of $27,000 to Dr. Arasi.[3]

The final two issues raised by NEEMA are (1) the sequestering of witnesses and (2) whether a directed verdict should have been granted. We find, after a thorough review of the record in this case, that the Honorable Jolene Grubb Kopriva has prepared a well-reasoned opinion which

---

**3.** NEEMA alleges that the amount of restitution damages was, in fact, a sum somewhat less than that awarded. We agree with the trial court that this issue is waived because NEEMA failed to object to the amount at trial. The trial court stated:

> In reviewing the trial transcript, we conclude that [NEEMA] has waived the issue of the proper amount of wage loss. Post-trial relief may not be granted where the allegation of error was not raised at the trial. Pa.R.C.P. No. 227.1(b)(1). [NEEMA] permitted [Dr. Arasi's] Exhibit No. 11(a) to go to the jury without objection as to the amount of restitution wage loss set forth in the exhibit. [NEEMA] placed on the record an objection to the benefit-of-the-bargain measure in general, but said nothing with regard to the restitution measure. Therefore, we will not allow [NEEMA] to argue an error in the amount of damages awarded under the restitution measure where grounds for the objection were available at the time of trial, and [NEEMA] failed to raise the issue.

(Trial Court Opinion, 9/28/90, at 15, citation omitted).

properly and adequately disposes of these two issues. We therefore affirm on the basis of that opinion as to those issues.

Judgment affirmed.