RESOURCE TECHNOLOGY CORPORATION, a Wyoming Corporation; Robert Rucinski; and Joseph Morotti, Appellants (Plaintiffs),

v.

FISHER SCIENTIFIC COMPANY, a Delaware Corporation, Appellee (Defendant).

No. 96–38.

Supreme Court of Wyoming.

Oct. 4, 1996.

C.M. Aron and K. Karla Tull of Aron and Hennig, Laramie, for Appellants (Plaintiffs).

Ford T. Bussart and B. Joan Dodd of Bussart, West, Rossetti, Piaia & Tyler, P.C., Rock Springs, for Appellee (Defendant).

* Chief Justice at time of oral argument.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN * and LEHMAN, JJ.

MACY, Justice.

Appellants Resource Technology Corporation, Robert Rucinski, and Joseph Morotti appeal from the judgment which was entered in favor of Appellee Fisher Scientific Company.

We affirm.

## ISSUES

The appellants present the following issues on appeal:

1. Where FISHER SCIENTIFIC COMPANY induced Mr. Morotti and Mr. Rucinski to take part in a joint, four-year business project, then FISHER abandoned the project after one year, and after ordering production of less than half the quantity of goods originally intended: Did the trial court err in holding that the doctrine of promissory estoppel did not apply?

2. Where FISHER SCIENTIFIC COMPANY induced RT CORPORATION to build a new facility for future production, then FISHER ordered no further production: Did the trial court err in holding that the doctrine of promissory estoppel did not apply?

3. Did the business relationship between FISHER SCIENTIFIC COMPANY and RT CORPORATION—whether or not it was technically a joint venture—impose on FISHER a legal obligation of good faith?

## FACTS

Fisher Scientific, a Delaware corporation whose headquarters were located in Pennsylvania, was in the business of supplying and marketing scientific equipment and chemical materials. In June 1988, Fisher Scientific and Western Research Institute, an affiliate corporation of the University of Wyoming located in Laramie, began discussing the potential development and marketing of a line of products known as "Solid Waste Reference Standards" (the products). Rucinski

and Morotti were employed by Western Research Institute at that time and were involved in the development of the project and in the discussions with Fisher Scientific.

Western Research Institute subsequently decided not to continue its involvement in the project. Morotti and Rucinski, whose employment had been terminated with Western Research Institute, negotiated with Fisher Scientific to take over Western Research Institute's role in the project. In order to facilitate that arrangement, Morotti and Rucinski formed Resource Technology, a Wyoming corporation.

On September 7, 1988, while the parties were negotiating the particulars of the arrangement, Fisher Scientific faxed a worksheet to Rucinski which outlined the "expected case scenario" for the production and marketing of the products over a five-year period. Resource Technology and Fisher Scientific executed a distribution agreement which was dated September 13, 1988. Under this agreement, Resource Technology was generally obligated to collect solid waste materials in bulk and homogenize, package, and inventory the materials at its place of business in Laramie. Fisher Scientific's general duties under the distribution agreement were to review the product lot specifications which Resource Technology submitted, to certify those lots which Fisher Scientific accepted, and to market the products. The distribution agreement did not include the quantity projections which had been outlined in the September 7, 1988, facsimile; however, it included provisions which set forth the process for determining which product lots would be produced and marketed. The distribution agreement also stated that the agreement would be in effect for four years from January 1, 1989, and included provisions for extending the term of the agreement under certain circumstances.

In 1991, Resource Technology's lease expired on the building where it produced the products. Resource Technology purchased land and constructed a new building to house its production facility. During the term of the distribution agreement, Fisher Scientific accepted and certified fifteen product lots, and it advanced $388,196 to Resource Technology for inventories.

Unfortunately, the product sales were disappointing. The potential customers were reluctant to purchase the products because using the products added an element of expense to their analytical processes which they were not required or willing to incur. The parties believed, however, that a viable market would eventually exist because they thought that the United States Environmental Protection Agency was going to promulgate a mandate which would encourage customers to use the products. Resource Technology and Fisher Scientific took numerous steps to encourage the adoption of the mandate and also executed a cooperative research and development agreement with the Environmental Protection Agency to promote the use of the products. The Environmental Protection Agency notified Resource Technology and Fisher Scientific in August 1992 that, despite their efforts, the mandate was not going to become law.

In light of the Environmental Protection Agency's notification, Fisher Scientific decided not to renew the distribution agreement which was slated to expire on December 31, 1992. Fisher Scientific notified Resource Technology that, effective October 1, 1992, it would release Resource Technology from its obligation under the distribution agreement to deal exclusively with Fisher Scientific with regard to the products. Fisher Scientific forfeited all the money which it had advanced to Resource Technology and all its claims to any proceeds from future sales of the products.

On July 9, 1993, the appellants filed a complaint in the district court against Fisher Scientific, asserting claims for promissory estoppel and breach of the implied covenant of good faith and fair dealing. After holding a bench trial, the trial court entered a judgment in favor of Fisher Scientific. The appellants subsequently perfected their appeal to this Court.

## DISCUSSION

### A. Standard of Review

█ The trial court made express findings of fact and conclusions of law under

W.R.C.P. 52(a). We, therefore, apply the standard of review which was recently stated in *Garaman, Inc. v. Williams*, 912 P.2d 1121, 1125 (Wyo.1996):

> In accordance with W.R.C.P. 52(a), this Court will not set aside a district court's findings of fact unless the findings are clearly erroneous. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo. 1993). " 'A finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Stated alternatively: "[A] determination that a finding is against the great weight of the evidence means a finding will be set aside even if supported by substantial evidence." *Id.* *See also Samuel v. Zwerin*, 868 P.2d 265, 267 (Wyo.1994). We review a district court's conclusions of law *de novo* on appeal. *Hopper*, 861 P.2d at 538.

*McNeiley v. Ayres Jewelry Co.*, 886 P.2d 595, 597 (Wyo.1994).

## B.  Choice of Law

■ As an initial matter, we must determine which state's laws govern. Wyoming is, of course, the forum state; however, the distribution agreement included a choice of law provision which stated: "This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." The RESTATEMENT (SECOND) OF CONFLICT OF LAWS sets forth the following rule for applying choice of law agreements:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue. . . .

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971 & Supp.1989). This Court stated in *Smithco Engineering, Inc. v. International Fabricators, Inc.*, 775 P.2d 1011, 1018 (Wyo.1989), that we will not apply foreign law when it is contrary to the law, public policy, or the general interests of Wyoming's citizens.

Fisher Scientific's headquarters were located in Pennsylvania, and that state, therefore, had a reasonable relationship to the matters at issue in this case. Additionally, the application of Pennsylvania law in this case will not be contrary to the law, public policy, or the general interests of our citizens because Pennsylvania's laws and Wyoming's laws are very similar on the matters at issue in this case. We will, therefore, recognize the parties' agreement and apply Pennsylvania law to determine the matters of substantive law which are in dispute in this case. RESTATEMENT, *supra*, at §§ 186, 187; *see also Smithco Engineering, Inc.*, 775 P.2d at 1018; *J.W. Denio Milling Company v. Malin*, 25 Wyo. 143, 155–56, 165 P. 1113 (1917).

## C.  Distribution Agreement

The trial court found that the distribution agreement was not ambiguous and that it was fully integrated. The trial court ruled, therefore, that parol evidence was not admissible to contravene the written contract. Although the appellants do not raise an issue on appeal which directly addresses the integration issue, we must consider this matter in order to correctly decide the issues which were raised by the appellants. The appellants contend that the distribution agreement was not fully integrated because it did not define the types or quantities of products which would be produced and marketed under that agreement. They argue that the

trial court, therefore, should have allowed parol evidence to be admitted at the trial.

The determinations of whether a contract is integrated and what effect a court will give to parol evidence are matters of substantive law. 16 AM.JUR.2D *Conflict of Laws* § 132 (1979); RESTATEMENT, *supra*, at § 140. In accordance with our earlier decision on the choice of law issue, we will apply Pennsylvania law to determine whether the distribution agreement was fully integrated.

■ Under Pennsylvania law, "[w]here parties, 'without any fraud or mistake have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of this agreement.'" *Snyder Brothers, Inc. v. Peoples Natural Gas Company*, 450 Pa.Super. 371, 676 A.2d 1226, 1231 (1996) (quoting *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791 (1924)). In *Snyder Brothers, Inc.*, the Pennsylvania court went on to state:

> "All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence."

676 A.2d at 1231 (quoting *Union Storage Co. v. Speck*, 194 Pa. 126, 45 A. 48 (1899)).[1] Under the parol evidence rule, neither oral testimony nor prior written agreements are admissible to explain or vary the terms of a fully integrated written contract. *Gemini Equipment Co. v. Pennsy Supply, Inc.*, 407 Pa.Super. 404, 595 A.2d 1211, 1215 (1991). The parol evidence rule is particularly applicable to contracts which contain integration clauses. *See Snyder Brothers, Inc.*, 676 A.2d at 1231; *National Cash Register Company v. Modern Transfer Co., Inc.*, 224 Pa.Super. 138, 302 A.2d 486, 489 (1973).

■ In this case, the distribution agreement contained an integration clause which stated:

11.4 **Entire Agreement:** This Agreement, including exhibits, constitute[s] the entire agreement between the Parties relating to the subject matter hereof and cancels and supersedes all prior agreements and understandings, whether written or oral, between the Parties with respect to such subject matter.

In addition to the integration clause, the distribution agreement prohibited oral modification or waiver of any of the agreement's terms. The distribution agreement also defined the period during which the contract would remain in effect and outlined the parties' rights and obligations. *See Gemini Equipment Co.*, 595 A.2d at 1216. According to the distribution agreement's plain language, the parties intended for the agreement to be a complete recitation of their understandings.

The lack of a specification of the types or quantities of products which were to be produced did not render the distribution agreement incomplete. *See id.* Given the nature of the agreement—Resource Technology submitted product lot specifications to Fisher Scientific and Fisher Scientific certified the lots which it accepted—it would have been virtually impossible to specify the types of products which would be produced or to set an absolute quantity quota. The September 7, 1988, facsimile set forth only an "expected case scenario" for the quantities which would be produced and marketed during the term of the contract. While the parties could have included that earlier document as a part of their distribution agreement, they did not, and the integration clause in the distribution agreement expressly canceled all prior agreements and understandings. We conclude, therefore, that the contract was fully integrated and that parol evidence was not admissible to add to or subtract from the written distribution agreement.

### D. Promissory Estoppel

■ The appellants presented two separate promissory estoppel claims. Morotti and Rucinski asserted the first claim. They

---

1. The appellants do not assert that fraud, accident, or mistake occurred in the execution of the distribution agreement.

were apparently contending that Fisher Scientific induced them into participating in the project by making express representations as to the number of product lots which would be produced and marketed and as to the amount of money which Fisher Scientific would appropriate for the project. Morotti and Rucinski maintain that they relied upon those representations to their detriment when they did not pursue other employment opportunities and encumbered their other assets in order to participate in the project.

All the appellants made the second promissory estoppel claim against Fisher Scientific. They asserted that Fisher Scientific induced them to build the production facility in 1991 by making representations as to the additional production which would be required. The appellants contend that they relied upon Fisher Scientific's representations to their detriment when they incurred costs for construction of the facility and environmental cleanup.

In its findings of fact, the trial court found that the appellants' "reliance . . . , if any, and inducements made by Fisher, if any, have inured to the benefit of [the appellants] and in no way to their detriment." The trial court, therefore, concluded:

> 4. The doctrine of promissory estoppel [was] not an appropriate claim for relief under the facts and circumstances of this case. In any event, [the appellants] have failed to prove by a preponderance of the evidence that they suffered any consequential economic damage secondary to any legal obligation created by inducements made by Defendant Fisher or reliance thereon by [the appellants].

Much of the evidence which pertained to the appellants' promissory estoppel claims was parol evidence that added to and varied the express terms of the distribution agreement. Our earlier rulings that the contract was fully integrated and that parol evidence was inadmissible essentially decide this issue.

Nonetheless, we are convinced that, even had all the parol evidence about Fisher Scientific's alleged promises been admissible, the appellants still would not have prevailed on their promissory estoppel claims. The promissory estoppel requirements in Pennsylvania are:

> "(1) the promisor must make a promise that he should reasonably expect to induce action or forbearance on the part of the promisee; (2) the promise must actually induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise."

*Holewinski v. Children's Hospital of Pittsburgh*, 437 Pa.Super. 174, 649 A.2d 712, 714 (1994), *appeal denied* 540 Pa. 641, 659 A.2d 560 (1995) (quoting *Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 384 A.2d 1228, 1233 (1978) (en banc)). *See also Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 636 A.2d 156, 160 (1994). The Pennsylvania courts have held that the remedy under the promissory estoppel doctrine is determined by taking into account what is required to prevent injustice. *Arasi v. Neema Medical Services, Inc.*, 407 Pa.Super. 393, 595 A.2d 1205, 1209 (1991), *appeal denied* 529 Pa. 655, 604 A.2d 247 (1992). This remedy may include enforcement of the promise or payment of damages. *Id.* The trial court's finding in this case that the appellants did not suffer any consequential economic damages as a result of Fisher Scientific's representations was tantamount to a finding, under the third element of the promissory estoppel requirements, that the appellants did not suffer an injustice which Fisher Scientific should remedy.

The appellants presented some evidence about other employment which Morotti and Rucinski could have potentially accepted instead of forming Resource Technology and executing the distribution agreement with Fisher Scientific. That evidence was, however, speculative. The trial evidence reveals that Morotti and Rucinski received compensation during the time that they were participating in the project. As to the appellants' contention that they suffered harm as a result of their construction of the production facility, they do not direct us to any evidence in the record which supports this claim. In fact, the appellants continued to own and use the building after the project ended, and they built up equity in the property. The record

reveals that Fisher Scientific suffered economic losses as a result of its involvement in the project. Fisher Scientific forfeited the money which it had advanced to Resource Technology and all its rights to any future proceeds from sales of the products. Additionally, Fisher Scientific spent a great deal of money to promote the failed product line.

All the parties incurred some losses and were disappointed because the project failed. We agree with the trial court that the appellants' promissory estoppel claims must fail because they did not suffer an injustice. Consequently, we do not need to determine whether the representations were actually made or whether the representations induced the appellants to act.

### E. Implied Covenant of Good Faith and Fair Dealing

The appellants contend that the trial court erred when it denied their claim for breach of the implied covenant of good faith and fair dealing. They maintain that Fisher Scientific owed them a duty of good faith and fair dealing because the parties were involved in a joint venture to produce and market the products.

The trial court concluded:

2. [The appellants'] asserted claim for covenant of good faith and fair dealing is not a cognizable claim under the controlling precedents.

3. [The appellants] have failed to prove any facts which would adequately support a finding by this Court that a joint venture existed among the parties.

The courts look to the parties' intentions to determine whether a joint venture has been formed. *Newlin Corporation v. Commonwealth Department of Environmental Resources*, 134 Pa.Cmwlth. 396, 579 A.2d 996, 999 (1990), *appeal denied* 527 Pa. 595, 588 A.2d 915 (1991).

"A joint venture is not a status created or imposed by law; it is a relationship voluntarily assumed and arising wholly from contract. Whether persons have engaged in it must depend primarily upon their intention as expressed in agreement and the construction they have placed upon it."

*Id.* (quoting *Snellbaker v. Herrmann*, 315 Pa.Super. 520, 462 A.2d 713, 716 (1983) (citation omitted)).

In this case, the distribution agreement's express language indicated that Resource Technology and Fisher Scientific did not intend to form a joint venture. The distribution agreement explicitly stated: "This Agreement does not constitute either Party the agent or legal representative of the other for any purpose whatsoever."

■ The Pennsylvania courts also look to a four-part test to determine whether a joint venture exists:

" 'To constitute a joint venture certain factors are essential: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a "joint proprietary interest and right of mutual control over the subject matter" of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction.' *McRoberts v. Phelps*, 391 Pa. 591, 599, 138 A.2d 439, 443–444 (1958)."

*Newlin Corporation*, 579 A.2d at 999 (quoting *Snellbaker*, 462 A.2d at 716).

Both parties contributed to the project by providing capital and scientific expertise, and the parties' relationship involved only a single business transaction. The parties did not, however, have a joint ownership or a proprietary interest in the business. The distribution agreement set out in great detail what the parties' respective rights and obligations were; however, it did not include provisions which defined the types of mutual control of the business and the sharing of profits and losses traditionally associated with a joint venture. *See Newlin Corporation*, 579 A.2d at 999–1000; *Wilkins v. Heebner*, 331 Pa.Super. 491, 480 A.2d 1141, 1144–45 (1984). We, therefore, agree with the trial court that a joint venture did not exist between the parties.

■ The appellants argue that, even if a joint venture did not exist, Fisher Scientific still owed them a duty of good faith and fair

dealing and that Fisher Scientific breached that duty. Pennsylvania law limits the situations in which a separate implied duty of good faith and fair dealing exists in the performance of a contract. *See Commonwealth Department of Transportation v. E–Z Parks, Inc.,* 153 Pa.Cmwlth. 258, 620 A.2d 712, 717 , *appeal denied* 534 Pa. 651, 627 A.2d 181 (1993); *see also Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 221–22 (Wyo.1994) (recognizing that, in Wyoming, tort recovery under the implied covenant of good faith and fair dealing will occur only in rare and exceptional cases when a special relationship exists between the parties).

> This duty of good faith is limited to situations where there is some special relationship between the parties, such as a confidential or fiduciary relationship. A confidential relationship exists when "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering or dominance on one side, or weakness, dependence or justifiable trust, on the other." *Estate of Clark,* 467 Pa. 628, 635, 359 A.2d 777, 781 (1976). (citation omitted). A business association may be the basis of a confidential relationship "only if one party surrenders substantial control over some portion of his affairs to the other." *In Re: Estate of Scott,* 455 Pa. 429, 433, 316 A.2d 883, 886 (1974).

*E–Z Parks, Inc.,* 620 A.2d at 717.

We have not found any evidence which indicates that a special relationship existed between Fisher Scientific and the appellants. Their relationship was governed by the distribution agreement's terms. Fisher Scientific did not attempt to dominate the appellants, and the appellants were not weak or dependent upon Fisher Scientific. Morotti and Rucinski were, in fact, experienced and sophisticated businessmen, and they did not surrender substantial control of their business affairs to Fisher Scientific.

We conclude that the trial court correctly denied the appellants' claim for breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

We hold that the trial court did not err by granting a judgment in favor of Fisher Scientific and against the appellants.

Affirmed.