Frank LAHNSTON, Appellant (Plaintiff),

v.

SECOND CHANCE RANCH COMPANY,
a Wyoming corporation;  and George H.
Nelson, Jr., Appellees (Defendants).

No. 96–326.

Supreme Court of Wyoming.

Nov. 30, 1998.

Don W. Riske of Riske & Arnold, P.C., Cheyenne, WY, for Appellant.

John R. Vincent and Donald J. Keenan, Riverton, WY, for Appellees.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

LEHMAN, Chief Justice.

Frank Lahnston, a minority shareholder of a dissolved Wyoming corporation, the Second Chance Ranch Company (Corporation), challenges the district court's finding that loans of money, goods and services provided to the Corporation by George H. Nelson, Jr., the majority shareholder, were valid and enforceable corporate debts. We affirm.

Appellant Lahnston presents the following issue for our review:

> Whether the district court erred in holding that the loans made to the Corporation by appellee [Nelson] were valid and enforceable debts of the Corporation.

Nelson, as appellee, states the issue in the same way. By order of this court, the Corporation was not required to file a brief in this appeal.

## FACTS

In 1987, Lahnston and Nelson formed the Corporation for the purchase of a ranch. Lahnston was assigned 100 shares for his investment of $100,000, while Nelson received 200 shares for his contribution of $200,000. Lahnston and Nelson were named as directors in the Articles of Incorporation. At the initial organizational meeting, Nelson was elected president, and Lahnston was elected to the positions of vice-president, secretary, and treasurer.

The initial capital investment of $300,000 was used as a down payment on the ranch; the balance of the $1,000,000 purchase price was financed. Shortly after incorporation, the Corporation obtained two separate loans to purchase a cattle herd and to pay the operating expenses of the ranch. Nelson and Lahnston had discussed early on that labor, equipment and other resources from the nearby High Island Ranch, owned by Nelson, would be used to conduct the business of the Second Chance Ranch, and those goods and services would be paid for at the usual and customary rates. The parties contemplated that the Corporation would earn sufficient income from its cattle operation, lease of pasturage, and lease of hunting rights to make the loan payments and to operate the ranch.

During each of the next five years, however, the Corporation experienced losses. Less than a year after the formation of the Corporation, Lahnston resigned his officer positions. Although he continued to be a director, he refused to participate in the management of the Corporation or to contribute additional capital to meet the financial obligations of the Corporation. Nelson made a series of loans of cash, goods and services from High Island Ranch to the Corporation, which, including interest, totaled approximately $255,000 by the end of 1991. When the Second Chance Ranch was sold in 1992, Nelson was paid $259,059.37 out of the sale proceeds in payment of the loans.

In January 1995, Lahnston brought a derivative shareholders action pursuant to W.R.C.P. 23.1. Lahnston claimed that Nelson breached his fiduciary duties in winding up the corporate affairs by understating the assets and overstating the debts of the Corporation, and alleged that the loans made by Nelson to the Corporation were not legitimate corporate debts. After a three-day, unreported bench trial, the district court ruled generally in favor of Nelson. The court rejected Lahnston's claim that Nelson breached a fiduciary duty to the Corporation or to Lahnston, concluding instead that Lahnston breached his duties to Nelson and to the Corporation by refusing to participate

---

* Chief Justice at time of oral argument; retired November 2, 1998.

in the management of the Corporation. The court found, among other things, that Lahnston and the Corporation authorized and ratified the loans by acquiescence and by retaining the benefits of those loans, and that the loans were in all respects fair to the Corporation.

Lahnston timely appeals the Judgment entered by the district court.

### STANDARD OF REVIEW

■ The district court made express findings of fact and conclusions of law pursuant to W.R.C.P. 52(a). This court will not set aside a district court's findings of fact unless the findings are clearly erroneous. *Resource Technology Corp. v. Fisher Scientific Co.*, 924 P.2d 972, 975 (Wyo.1996). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.* We review a district court's conclusions of law de novo. *Id.*

### DISCUSSION

■ On appeal, Lahnston focuses on the district court's ruling that the loans made by Nelson were valid obligations of the Corporation. He submits that, because the board of directors did not ratify the loan transactions with Nelson, they are void. Lahnston contends that the court erred by implying corporate ratification when the by-laws contain express requirements for ratification of contracts in which a director is a party.

The by-laws of the Second Chance Ranch Company, adopted by the Corporation on October 19, 1987, include the following provision:

*Section 12–Contracts:*

\* \* \*

(b) Any director, personally and individually, may be a party to or may be interested in any contract or transaction of this Corporation, and no director shall be liable in any way by reason of such interest, provided that the fact of such interest be disclosed or made known to the Board of Directors, and provided that the Board of Directors shall autho-

rize, approve or ratify such contract or transaction by the vote (not counting the vote of any such director) of a majority of a quorum, notwithstanding the presence of any such director at the meeting at which such action is taken. Such director or directors may be counted in determining the presence of a quorum at such meeting. This Section shall not be construed to impair or invalidate or in any way affect any contract or other transaction which would otherwise be valid under the law (common, statutory or otherwise) applicable thereto.

Disregarding for a moment the last sentence, we note that, despite the fact that Section 12 allows for transactions between the Corporation and its directors, ratification of such transactions by vote was impossible so long as the Corporation had only two directors. According to Section 6 of the by-laws, the presence of a majority of the Board, two in this case, was required to constitute a quorum. Ratification under Section 12 required the vote of a majority of the quorum, again, two. Because Nelson, as a director interested in the transactions, was disqualified from voting, ratification by vote could never occur.

The last sentence, however, provides that Section 12 shall not invalidate or impair contracts or transactions otherwise valid under the law. We look, then, to the statutory and common law governing ratification to determine if the loans made by Nelson to the Corporation were valid. The Wyoming Business Corporation Act, 17–16–101 et seq., contains a provision specific to conflict of interest transactions:

(a) A conflict of interest transaction is a transaction with the corporation in which a director of the corporation has a direct or indirect interest. A conflict of interest transaction is not voidable by the corporation solely because of the director's interest in the transaction if any one (1) of the following is true:

\* \* \*

(iii) The transaction was fair to the corporation.

W.S. 17–16–831 (1997). After hearing witness testimony and reviewing the exhibits presented during trial, the trial court made

detailed factual findings. Specifically addressing the fairness of the transactions, the court found:

6. Plaintiff and Defendant Nelson agreed to engage Dave Koerwitz as the certified public accountant for SCR [Second Chance Ranch] and Mr. Koerwitz established a method of bookkeeping which captured all the bartered transactions between SCR and High Island and accurately recorded all of the money and/or goods and services which Mr. Nelson loaned to SCR personally. * * *

7. The Court finds that the books and records of SCR prepared by Dave Koerwitz's certified public accounting firm accurately reflect the expenses and incomes of SCR on a monthly and yearly basis and the Court further finds that the accounting records completely and accurately reflect the balance due from either High Island or SCR for the trades of goods and services between the two ranches. The Court also finds that entries to the books and records * * * were made as a part of the regularly conducted business activities of SCR and that the entries were based on information provided from a person with knowledge of the activities, expenditures or operations. * * *

16. * * * The Court further finds that the cash, goods and services advanced to SCR by Nelson were required in order for SCR to continue in business and that the barter transaction[s] and loans of money were in the best interest of SCR and its shareholders[,] known of by both Nelson and Lahnston either at or near the time of each transaction and that without the advance of money and/or goods and services by Mr. Nelson, SCR would have suffered economic hardship. The Court also finds that the barter transactions and loans of cash to SCR were transactions to have been fair and reasonable and in the best financial interest of SCR * * *.

* * *

21. That the Court finds by a preponderance of the evidence * * * that the loans were in all respects fair to the corporation.

The court's findings are supported by the record and are not clearly erroneous. As a result, the transactions are not voidable solely on the basis of Nelson's interest because they fall within W.S. 17–16–831(a)(iii).

Lahnston directs our attention to *J Bar H, Inc. v. Johnson*, 822 P.2d 849 (Wyo.1991), where this court, applying W.S. 17–16–801(b), determined that a loan to a corporation by a shareholder was not a valid corporate obligation. Wyoming Statute 17–16–801(b) (Dec. 1989 Rpl.) provides:

(b) All corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitation set forth in the articles of incorporation.

In *J Bar H*, Johnson, a fifty percent shareholder and director, was squeezed out of participation in the management of a closely-held corporation. She did not authorize the corporation to incur the debt. Although a corporate resolution had been adopted allowing the corporation to borrow money from the shareholders, Johnson was not informed of the resolution, nor was it signed by her as corporate secretary. We held, therefore, that the board had not authorized the loan, and it was not a valid debt of the corporation. Lahnston contends that this case is factually similar to *J Bar H* in that the board did not authorize Nelson's acts as a corporate officer.[1] Specifically, he contends that Nelson was not authorized to enter into the loan transactions, to execute and deliver a mortgage of corporate property as security for the debt, or to approve the closing statement which contained a deduction from the proceeds to repay the debt.

---

1. At the time of the questioned transactions, Lahnston and Nelson were the sole directors; and, therefore, unanimity was required for board action. The issue, then, is whether the transactions were ratified by Lahnston so as to effect authorization by the board.

Without deciding the question, we assume for purposes of this appeal that Nelson exceeded his authority as president of the Corporation. If the officers of a corporation exceed their authority and the act is one that could have been authorized in the first instance by the board of directors, the act may be expressly or impliedly ratified and thus be rendered just as binding as if it had been authorized when done. 2A FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS §§ 752, 762 (1992); *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 116–17 (Alaska 1990). Implied ratification of a previously unauthorized act may result from 1) accepting and retaining the benefits of the act, 2) silence, acquiescence, or failure to repudiate, or 3) other affirmative acts showing an adoption of the act or contract. FLETCHER CYC. CORP., *supra*, § 762, *Barnes v. Treece*, 15 Wash.App. 437, 549 P.2d 1152, 1157 (Wash.App.1976). Ratification requires full knowledge of all the material facts on the part of the corporate principal. FLETCHER CYC. CORP., *supra*, § 757; *see also Farmers' State Bank v. Haun*, 30 Wyo. 322, 346, 222 P. 45, 53 (1924). Although actual knowledge of the act is required, directors are held to know that which they could have ascertained with slight diligence. *Haun*, 30 Wyo. at 349, 222 P. at 54–55. A director is chargeable with knowledge of those corporate affairs which it is his duty to know. *Id.*, 30 Wyo. at 349, 222 P. at 55. Whether or not ratification exists is a question of fact where more than one inference can be drawn from the evidence. FLETCHER CYC. CORP., *supra*, § 781; *Sea Lion Corp.*, 787 P.2d at 117–18. Whether the evidence is legally sufficient to establish ratification is a question of law for the court. FLETCHER CYC. CORP., *supra*, § 781. Ratification occurs as a matter of law where reasonable persons could draw only one conclusion from the evidence. FLETCHER CYC. CORP., *supra*, § 781; *Sea Lion Corp.*, 787 P.2d at 117–18.

It is uncontested that the transactions between Nelson and the Corporation were not authorized or ratified by formal action of the Board. Nevertheless, the district court found that the Corporation and Lahnston, by knowledge and conduct, ratified the loans. The court's findings included:

4. * * * Prior to the purchase, both Lahnston and Nelson were aware that the ranch provided summer and fall pasturage and that the cattle which SCR intended to purchase would need to be kept for the winter and spring at another location. * * *

5. Because the purchase price of the Gardner place did not include any livestock or equipment, Plaintiff and Defendant Nelson agreed to use men, equipment and other resources of High Island ranch to conduct the business of SCR. SCR would pay for those goods and services at the usual and customary rates and any exchanges or barters would be reported accordingly. * * *

6. * * * Koerwitz's [accounting] firm provided monthly financial statements to the First National Bank of Thermopolis, Defendant George Nelson and Plaintiff Frank Lahnston beginning in July, 1987 and said financial statements included a monthly profit and loss statement and a balance sheet. Koerwitz's firm also prepared year-end financial statements, a federal income tax return and K–1 statements for each of the years of the corporation[']s existence, which were also provided to First National Bank and Plaintiff Lahnston and Defendant Nelson. * * * The financial statements also set forth the amount of the barter transactions which occurred on a monthly basis, the amount of money loaned to SCR by Mr. Nelson, the amount of revenues earned by SCR by virtue of its cattle operations and its lease of hunting rights together with pasture leasing. * * * Mr. Lahnston admitted he knew from the financial statements and year end financial statement of 1991 that Defendant Nelson claimed to be owed money based upon his loans of cash to SCR for the goods and services Defendant Nelson provided to SCR via High Island.

* * *

10. That Plaintiff, after giving notification of his intent not to be an officer or director of the corporation, refused to

participate in the management of SCR, to discuss loans of money in order to keep the corporation solvent or to obtain hunters for SCR. That Plaintiff Lahnston refused to attend Board of Directors meetings, refused to appoint a third director when it became apparent there was a deadlock in management.

\* \* \*

15. That the year-end financial statement for SCR for the year 1991, which showed an amount due to Nelson of $254,919.27, was provided to Plaintiff on the K–1 for the year 1991. Plaintiff did deposit the checks made payable to him from the closing proceeds in the amount of $69,991.47. That Plaintiff Lahnston did not attempt to prevent the closing or require that the proceeds from closing be placed in escrow and did nothing in general to object to the sale of the ranch or the payment to Nelson of the sums due him for goods and services advanced to SCR from 1987 through 1991.

The court's factual findings, which are supported by the record, demonstrate important differences between this case and *J Bar H*. Here, Lahnston was not squeezed out of his management role in the Corporation; rather, he resigned his officer positions and chose not to participate as a director. The parties contemplated trades between High Island Ranch and the Corporation at the outset, and the transactions were accounted for in the financial statements. Further, the facts in *J Bar H* apparently did not raise the issue of whether the board, or Johnson in particular, had ratified the loans. The facts in this case support the court's conclusion that Lahnston had full knowledge of the transactions between Nelson and the Corporation and that Lahnston and the Corporation impliedly ratified the transactions both by acquiescing in the transactions and by accepting the benefits thereunder.

### CONCLUSION

The loan transactions between Nelson and the Corporation were valid under both statu-

tory and common law and, consequently, were not in contravention of the corporate by-laws. The district court did not err when it determined that the loans were enforceable debts of the corporation. Affirmed.